# ROBERT LEE MAYS *v.* STATE OF MARYLAND

[No. 149, September Term, 1977.]

*Decided September 26, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Mark Colvin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which LEVINE, J., concurs at page 556 *infra.*

In this case, here on certiorari, petitioner Robert Lee Mays challenges his convictions in the Criminal Court of Baltimore for murdering Thomas Dukes and Joseph Watson, as well as for carrying a weapon openly with the intent to injure these two victims. More specifically Mays challenges the propriety of the trial court's admission of testimony by a prosecution witness after the close of the State's case in chief. Because

we find that this evidentiary ruling was proper under the principles this Court enunciated in our recent decision in *State v. Hepple,* 279 Md. 265, 368 A. 2d 445 (1977), we will uphold the convictions in this case.

In the early evening of January 9, 1976, Baltimore police officers, responding to a call, found the bodies of Watson and Dukes in an apartment building parking lot. Both of the men had been fatally wounded by shotgun blasts. Petitioner Mays was subsequently charged with the shootings and at his jury trial the State, as part of its case in chief, introduced into evidence a statement taken from the accused by a Baltimore police detective two days after the incident; in this statement Mays admitted the shootings but claimed he had acted in self-defense. In his account, which was read to the jury, Mays declared that as he was talking with Watson and Dukes, Dukes drew a revolver and robbed him of approximately $113; fearing for his life, the petitioner responded by grabbing a shotgun held by Watson and thereafter shot both men. Upon questioning by the detective about what became of his money, Mays, according to his written statement, replied: "I didn't take it back [from Dukes]." To refute the petitioner's story, the State presented substantial evidence casting doubt on his claim of self-defense, but concluded its case in chief without attempting to establish that the police, who arrived at the scene of the shootings within minutes of their occurrence, found no money there or upon the bodies of either of the victims when they were searched later at the morgue.

In his own defense, petitioner took the witness stand and gave testimony similar to that which he had originally related to the police. Again, whether Mays had recovered from Dukes any of the money taken in the alleged robbery was not the subject of inquiry in either direct or cross-examination. No other evidence was presented by Mays — apparently several witnesses he intended to call could not be located — and the defense rested. At this point, the following colloquy took place between Judge Shirley B. Jones and counsel out of the jury's presence:

> THE COURT: The State had indicated it had some rebuttal from yesterday's testimony, and I guess I'll

go out on the limb and state if by chance some of these [defense witnesses] should show up, even after the State's rebuttal, if they do show up then you [defense counsel] could still put them on. Today that is, because, I mean, we can't just continue this case forever. So I will certainly try to be as lenient as possible.

DEFENSE COUNSEL: I don't know if it would be proper for me at this time to renew my motion for judgment of acquittal or whether I should wait for the end of the State's rebuttal.

THE COURT: I think you'd better wait until the end of the State's — until the end of the entire case. Now, before we get the jury in, . . . the jury has sent out to me three written questions. They appear to be all on the same subject matter. I am going to read them to you. The first question reads, "Was any money, namely five twenty dollar bills, found on either Thomas Dukes or Joseph Watson when the police examined their effects?" The next question is, "Was there any money recovered from either of the victims? If so, may we know the amount?" The third question is, "Was any money found on Mr. Dukes after his death or near his body," and they all seem to be relevant questions, and either side, I presume, will pursue them.

The court then reconvened and Judge Jones addressed the jury:

There has been a further question from one of the members of the jury as to whether Mr. Robert Mays had a hunting license, has a hunting license or had one. Members of the jury, good morning. First of all, I thank you again for patiently waiting, and the questions you sent out have been brought to the attention of counsel and the defendant, and there is to be some further testimony from the State's witnesses at this point.

The State then proceeded to call several witnesses, the

second of whom was Detective August Bucheit. Reacting to a prosecution question to the detective concerning the results of his search of the victims' clothing at the morgue, defense counsel made the following objection:

> DEFENSE COUNSEL: ... I don't believe this is proper rebuttal. The State is bringing this out because of the questions that were asked by the jurors, but Mr. Mays never suggested in any way in his testimony that the money was on them. He never said anything, didn't know where the money was. There is nothing to rebut. I don't feel that just because the jury has asked questions that all of a sudden he can basically reopen his case to show there was nothing found on them.

> THE COURT: I think it is proper rebuttal to Mr. Mays' testimony that this holdup took place because he, Mays, was robbed by Dukes who told him to turn over all of his money, and he took $13.00 and then he asked for some more and took his wallet ....

The objection being overruled, Detective Bucheit responded to the question by stating that his search of both victims' clothing disclosed no money. Although additional testimony was presented by each side on other points, there was no further evidence produced relating to the allegedly stolen money. The jury found Mays guilty of the first degree murder of Watson, the second degree murder of Dukes, and the weapon carrying charge. In affirming Mays' conviction, the Court of Special Appeals, in an unreported opinion, while concluding that Detective Bucheit's testimony was improper as rebuttal evidence nonetheless held that it was admissible since his statement was received pursuant to the trial judge's exercise of her discretionary power to vary the order of proof.

In *State v. Hepple* we recently reiterated what has long been the accepted practice in Maryland controlling the State's production of further testimony after it has closed its case in chief:

> [T]here are two distinct types of evidence which may be adduced at ... [the rebuttal stage of] the

> proceedings: (1) rebuttal evidence, which the State ordinarily has a right to have received, and (2) evidence which should have been adduced during the State's case in chief, but which the trial court, in the exercise of its discretion to vary the order of proof, may allow at the rebuttal stage ... so long as this action does not impair the ability of the defendant to answer and otherwise receive a fair trial. [279 Md. 265, 270, 368 A. 2d 445, 448-49 (1977).]

The question squarely presented to us at this juncture is the proper application of the principles set forth in *Hepple* under the circumstances occurring here.

Initially, we would note that we are in agreement with the Court of Special Appeals' ruling, which the State concedes was appropriate, that Detective Bucheit's testimony could not properly be admitted as rebuttal evidence since it did not explain, reply to, or contradict any new evidence presented by the accused. *Id.* at 270 [449]. Thus, if the detective's declaration was correctly received, the record must authorize the conclusion that it was permitted pursuant to the discretion resting with the trial judge to vary the conventional order of proof. As we observed in *Hepple,* if evidence is to be admitted on the theory that the order of proof is being altered, the record must indicate that the trial judge was, in fact, exercising her discretion. *Id.* at 274 [451].

In this case, it is clear that the trial court — unlike the court in *Hepple* — did in fact exercise its discretion to vary the order of proof when, after the prosecution and the defense had each closed its case in chief, and in response to the jury's query as to whether any money was found on the victims, the judge advised counsel for both the State and the defendant of the jury's inquiries and said: " [T]hey all seem to be relevant questions, and *either side, I presume, will pursue them."* (Emphasis added.) As we observed in *Hepple,* the court may invoke its discretionary power to vary the order of proof sua sponte. *Id.* at 273 [450]. There is no question that this is precisely what the trial judge did when she made the quoted statement; indeed, it can be reasonably concluded that the

remark was a directive from the court that the information be supplied to the jury. In view of such a clear announcement that both prosecution and defense could now offer evidence on this question despite the close of each party's case in chief, the suggestion that the court's statement was not a ruling, and that the prosecutor should have made a motion to reopen his case before presenting such evidence, is not reasonable: Such a course of action would surely be thought totally superfluous by the average person having a comprehension of the English language. Moreover, by indicating that the jury should receive the information it sought and that "either side" could supply the answers, Judge Jones certainly made clear to all that permission to vary the order of proof was being granted. This appears to us to be obvious for otherwise the defense would have no right to adduce new evidence at what is normally the rebuttal stage of the case.[1]

Thus, exercising its discretion, the trial court clearly ruled, sua sponte, that either or both the State and defense counsel could respond to the jury's inquiries by presenting new evidence at the rebuttal stage of the case. Petitioner, however, emphasizes the fact that when the State asked the pertinent questions of Detective Bucheit and defense counsel objected solely on the ground that the testimony was improper rebuttal, the trial judge responded, "I think it is proper rebuttal to Mr. Mays' testimony . . . ." Of course, the trial judge was wrong in so stating; however, it must be borne in mind that this ruling was limited to the basis assigned by counsel for his objection and thus in no way purported to impinge on the earlier ruling varying the order of proof. *See von Lusch v. State,* 279 Md. 255, 263, 368 A. 2d 468, 472-73 (1977) (counsel volunteering grounds for evidentiary objection waives all other grounds on appeal); Md. Rules 522 & 761; *cf. Forrester v. State,* 224 Md. 337,

---

1. That the court was indeed varying the order of proof when it made the first statement quoted in the text above becomes even clearer in light of the fact that in that ruling the judge specifically stated that the defense could, after the State's rebuttal, present testimony of certain witnesses who should have testified during the defense's case in chief but who were not yet present in court.

343-44, 167 A. 2d 878, 881 (1961) (prior admission of inadmissible testimony without objection waives all subsequent objections). Judge Jones had already exercised her discretion to allow such testimony, whether or not it was proper rebuttal, and was, in effect, simply offering an alternative basis for the admissibility of the testimony, a basis upon which she should not have relied. The crucial point is that the judge had previously decided to vary the order of proof and to entertain such evidence from either party — a determination which was entirely within her discretion; [2] the judge's subsequent error in stating that the testimony was proper rebuttal does not automatically remove the prior appropriate determination to admit the evidence. There is nothing unusual in the admission of evidence on alternative grounds. Further, there is considerably less reason to be hypertechnical in requiring complete clarity of ruling on the part of the trial judge when the change in the order of presentation of evidence was precipitated by a proper request from the jury for information to aid it in its fact-finding function, occurred at a time when it resulted in no demonstrated unfairness to the defense, *see State v. Hepple, supra,* 279 Md. at 270, 368 A.2d at 449, and was not instigated by the State to manipulate the order of proof for the purpose of obtaining an improper advantage over the defendant. *Id.* at 271 [449].

*Hepple* simply requires an indication in the record that the trial court was exercising its discretion to vary the order of proof. Such an indication is manifest here from the content, timing, and context of the trial court's statement that "either side, I presume, will pursue [the jury's inquiries]." There is no justification for extending this Court's *Hepple* holding so

---

**2.** A variation from the usual order of producing evidence will only cause harm "where it tends to confuse the jury, or where it misleads the opponent or finds him unprepared to meet it." 6 J. Wigmore, *Evidence* § 1867, at 655-56 (J. Chadbourn rev. 1976). The necessity for such a variation depends "almost entirely upon the particular circumstances of each case," so that alteration is always allowable in the discretion of the court. *Id.; see* State v. Hepple, 279 Md. 263, 270-71, 368 A. 2d 445, 449 (1977). The exercise of that discretion was patently appropriate here for the inquiry was initiated by the jury obviously because at least some of its members were uncertain and thought the evidence concerning Mays' claim that he was robbed needed further exploration.

as to place the trial courts of this state in a straightjacket by requiring the incantation of magic words by the judge in order for him to demonstrate that he was exercising his discretion to permit an alteration in the order of proof.

*Judgment of the Criminal Court of Baltimore affirmed.*
*Costs to be paid by petitioner.*

*Eldridge, J., dissenting:*

In *State v. Hepple,* 279 Md. 265, 368 A. 2d 445 (1977), this Court flatly held that when a trial court erroneously admits testimony as rebuttal evidence, the error is not cured because the court might have properly allowed the testimony in the exercise of its discretion to vary the normal order of proof. The Court there stated (279 Md. at 273-274):

"We further point out that it is of no consequence that the trial judges might have allowed the testimony pursuant to their discretion to deviate from the conventional order of producing evidence, because we are convinced that in both cases this discretion was not exercised. . . . [B]ecause there is no indication here ... that either court was exercising its discretion to vary the normal mode of presentation of evidence, we cannot uphold the admission of the disputed testimony, even if we were convinced, looking at the record in retrospect, that the trial court could have properly allowed that testimony pursuant to . this discretionary authority. . . . This is so because if testimony is admitted at the rebuttal stage, but only pursuant to the trial court's discretion to vary the order of proof, the defense must be afforded the same opportunity to investigate and attempt to impeach or otherwise respond to the State's witness as it would have had had the evidence been offered in chief. . . . Our decision today in no way restricts the exercise of the trial court's discretion to allow non-rebuttal evidence at the rebuttal stage of a trial — it merely requires

that a change in the normal order of presentation of evidence be *in fact* an exercise of the court's discretion."

In my view, the above-quoted holding is fully applicable to the instant case. Here also, it does not matter whether the trial court might have allowed the testimony pursuant to its discretion to deviate from the conventional order of proof. I am convinced that the court in the present case, like the trial courts in *Hepple*, admitted the challenged testimony solely on the ground that it was rebuttal evidence.

The majority, in asserting that the court in this case did in fact exercise its discretion to vary the order of proof, relies on the trial judge's comment that the jury's inquiries "seem to be relevant questions, and either side, I presume, will pursue them." Even taking this comment by the trial judge in isolation, it indicates only a "presumption" or expectation on the part of the judge that certain matters will be pursued. It was in no way a ruling on a disputed evidentiary issue. No question on the subject had yet been asked of any witness, and no issue had been raised by counsel. Moreover, the comment itself does not suggest the basis for the trial court's belief that the jury's questions could properly be pursued.

Later, however, the trial judge did, for the first time, make a ruling on the matter. After defense counsel objected to a specific question, the court overruled the objection on the ground that "I think it is proper rebuttal to Mr. Mays' testimony . . . ." The trial court would not have overruled the objection solely on the ground that the evidence was "proper rebuttal" if the court really believed that it had previously ruled the evidence admissible in the exercise of its discretion to vary the order of proof. To state, as does the majority, that the trial court was "simply offering an alternate basis for the admissibility of the testimony," is to indulge in a fiction. Nothing in this record remotely suggests that the trial court believed that it was admitting the testimony on alternate grounds. I agree fully with the observations of Judge Melvin, in his dissenting opinion in the Court of Special Appeals, that:

"The actual ruling made by the court with respect to the disputed testimony . . . is the court's action in

overruling the objection to the question that elicited the disputed testimony. The trial court clearly based its ruling on its belief that the testimony [of Detective Bucheit] was 'proper rebuttal to Mr. Mays' testimony that this holdup took place.'"

Under our holding in *State v. Hepple, supra,* the convictions ought to be reversed and a new trial awarded.

Judge Levine has authorized me to state that he concurs with the views expressed herein.