617 A.2d 642

**Donald E. BOOZE and Alan Snead**

v.

**STATE of Maryland.**

**No. 182, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 4, 1993.

Bradford C. Peabody, Asst. Public Defender, argued (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

Sarah E. Page, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty for Baltimore City, on the brief), Baltimore, for appellee.

Argued before BELL, DAVIS and MOTZ, JJ.

DAVIS, Judge.

This case involves an appeal from the Circuit Court for Baltimore City. Donald Eugene Booze, Jr. and Alan Shelton Snead (appellants) were charged with the murders of Antonio Brandon Henderson and Isaac Durant and related

offenses. Appellants were convicted by a jury of two counts of first degree murder and illegal use of a handgun. They each received two consecutive life sentences for murder and consecutive ten year terms for illegal use of a handgun. In this timely appeal from those judgments, appellants present the following issue for our review:

Whether the trial court erred in permitting the State to reopen its case in chief at the rebuttal stage to offer the testimony of witness Perry Knight.

Because we hold that the trial court abused its discretion in allowing the State to reopen its case in chief to offer testimony at the rebuttal stage of the proceedings, we reverse and remand for a new trial.

## FACTS

### Pretrial Proceedings

On November 18, 1991, a hearing was held before Judge John N. Prevas on a defense motion to compel discovery pursuant to Md. Rule 4–263(a).

The case against appellants Snead and Booze had been docketed in the Circuit Court for Baltimore City on August 28 and September 4, 1991 respectively. Snead was arraigned and his counsel first appeared on September 26, 1991. Booze was arraigned and his counsel first appeared on October 18, 1991.

On September 26, 1991, the "State's Disclosure" was filed as to each appellant. Under the section for names of witnesses who made a pretrial identification, it was noted: "To be furnished at a later date."

At the hearing, the State's Attorney explained that she "was trying to develop enough information to file a protective order." Judge Prevas denied the State's motion for a protective order, in part, and ordered the State to disclose only to defense counsel the names of pretrial identification witnesses and to allow defense counsel to interview them. He also admonished the State for failing to disclose the pretrial identification witnesses until one day before appel-

lants' trial and not permitting the defense adequate time for trial preparation.

Judge Prevas transferred the proceedings to Judge Elsbeth Bothe. Before Judge Bothe, the defense then interviewed three State's identification witnesses—Jaquetta Jones, Dante Jones, and Michael Brooks—on November 19, 20, and 21, 1991.

## Trial

### State's Case in Chief

Trial commenced on Thursday, November 21, 1991. On the first day of trial, Michael Brooks, age 13, testified that on the night of July 28, 1991 he was walking along the street near Park Heights and Woodland Avenues in Baltimore with "Tony [Antonio Henderson] and Dante [Jones]," when "Cookie Man" (Snead) and "Butt–Butt" (Booze) began shooting.[1] Brooks testified that Snead was firing in front of an alley, while Booze ran out from a path.

On the second day of trial, Friday, November 22, 1991, Jaquetta Jones, age 20, testified that each appellant had a gun. Jones testified that she witnessed each appellant fire two shots and that she also heard several other shots.

The medical examiner testified that victim Antonio Henderson died of a gunshot wound to the chest. The bullet was not recovered. Victim Isaac Durant died of a gunshot wound to the lower back. A firearms examiner testified that the bullet taken from Durant's body was fired from a .38 caliber revolver. The only handgun submitted in evidence was a fully loaded .22 caliber revolver.

On the third day of trial, Monday, November 25, 1991, Baltimore Police Officer Nicholas Constantine testified that at about 10:00 p.m. on the night of July 28 he was in his marked vehicle parked in the 4700 block of Park Heights Avenue near the intersection with the 3100 block of Wood-

1. Dante Jones, age 14, testified that Snead was nicknamed "Cookie Man" and Booze was nicknamed "Butt–Butt."

land Avenue. A citizen directed Officer Constantine to the 3100 block of Woodland Avenue. Driving to that intersection, Officer Constantine encountered Snead running from the 3100 block of Woodland Avenue. Officer Constantine stopped Snead at gunpoint. Snead said: "I didn't have nothing to do with that." Officer Constantine then heard four to six shots coming from the 3100 block of Woodland Avenue. Snead said: "See, they're still shooting." Officer Constantine proceeded to the 3100 block of Woodland Avenue, where he found Antonio Henderson and Isaac Durant on the sidewalk.

Baltimore City Police Detective Oscar Requer testified that Michael Brooks gave police three different versions of the events of that night.

The State recalled Officer Constantine for the purpose of introducing the audiotapes of the police radio communications on the night of July 28, 1991. The State rested its case at 3:18 p.m. on Monday, November 28, 1991.

## Defense Case in Chief

The defense proceeded on the theory that appellants were in the 3100 block of Woodland Avenue area but were fleeing from the area because a gun battle had ensued. Appellants cite as evidence Officer Constantine's testimony that he heard gunshots in the area of 3100 block of Woodland Avenue when he encountered Snead.

Catherine Bennett testified that she was near the intersection of Park Heights and Woodland Avenue when she heard gunshots. Bennett testified that she witnessed Snead running, that gunshots were being fired at Snead, and that she had reported the gunshots to Officer Constantine. Bennett testified that Snead did not have a weapon.

Laurie Ward testified that she was with appellants when the shooting started. Ward testified that neither appellant had a gun.

**336**

### Rebuttal

Officer Constantine, then called by the State in rebuttal, contradicted Bennett's testimony that she approached him to report the gunshots.

The State then called Perry S. Knight as a rebuttal witness. Knight testified that he was the nephew of victim Antonio Henderson. Knight testified that, as a result of something said to him, he armed himself that night with a gun he kept hidden in the backyard of a vacant house. Knight testified that the victims were walking on Woodland Avenue when Booze looked towards Park Heights as though he were giving a signal.

At this point the defense objected that Knight's testimony was improper rebuttal. In response to defense objections, the State argued that (1) everybody had testified to three bursts of gunfire, (2) that Knight "saw [Booze] shoot [Antonio Henderson] and then he saw [Snead] and [Booze] running up the street," and (3) that after Knight "saw them shoot his uncle that he started firing at them and that was the third burst" of shots.

The trial court ruled that much of Knight's testimony was not rebuttal evidence, and that Knight should have testified during the State's case in chief. The trial court did find that Knight's testimony as to the origin of the third burst of bullets, but only this testimony, was proper rebuttal. The trial court noted that the State knew about Knight before it rested and deliberately failed to disclose the witness. The trial court further noted that the State should have disclosed Knight to defense counsel.

The State's Attorney admitted that the State first became aware of witness Knight on the evening of Thursday, November 21, 1991, which had been during its case in chief and four days before Knight's appearance. The State admitted that it did not disclose the witness because it wanted to reserve Knight's testimony for rebuttal. When the trial court questioned the State's use of Knight in rebuttal, the State's Attorney replied that "I could tell by the way they

were putting on their defense that they were going to try to say that there was a gun battle going on up the street.... But I was not sure so I had to wait to see that was their defense." The State apologized to the court for its erroneous belief that Knight could be used as a rebuttal witness. After ruling that Knight's testimony was improper rebuttal, the trial court prompted the State to reopen its case in chief. The State then moved to reopen its case in chief. The trial court granted the State's motion. The trial court accepted the State's representation that it learned of Knight only after trial commenced. In allowing the State to reopen its case in chief, the trial court stated that the testimony was relevant and material and that the jury should be allowed to hear the testimony. The defense objected to the trial court using its discretion to allow the State to reopen its case in chief. The trial court replied:

Look. Their reasons are phony. I do not accept them. It is improper rebuttal and she is wrong and she should not have done it, but that does not mean that the jury has to be deprived of relevant evidence. That is not the way to punish the State or the defense for that matter for not putting on evidence when they should have.

The trial court permitted defense counsel to interview the witness.

### State's Case in Chief Reopened

On direct examination, Knight testified that he saw appellant Booze walk toward Antonio Henderson and pull out a gun. Before Knight could warn his uncle, another gunman began firing from an alley, and simultaneously Booze shot Henderson. Both victims fell. Knight testified that he began shooting at Booze.

Knight testified that he could see the sparks coming from the gun of the man in the alley. Knight testified that he did not see the second gunman. Knight confirmed that he had first talked to police on the night of Thursday, November 21, 1991.

On November 26, 1991, appellants moved for a mistrial. That motion was denied.

## LEGAL ANALYSIS

Appellants argue that the trial court erred in permitting the State to re-open its case in chief at the rebuttal stage and by allowing Knight's testimony after finding that his testimony was not proper rebuttal evidence.

Trial judges are vested with broad discretion in the conduct of trials. *Hunt v. State,* 321 Md. 387, 405, 583 A.2d 218 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). This Court in a number of cases has reviewed the contention that it was reversible error to permit the State to reopen its case for the purpose of proving important or even essential facts to support a conviction and has found no abuse of discretion in a variety of circumstances. *Spillers v. State,* 10 Md.App. 643, 649, 272 A.2d 49 (1971); *Jones v. State,* 2 Md.App. 356, 363, 234 A.2d 625 (1967); *Boone v. State,* 2 Md.App. 80, 99, 233 A.2d 476 (1967); *Tingler v. State,* 1 Md.App. 389, 392, 230 A.2d 375 (1967). Accordingly, the trial court's discretion to re-open a case will not be overturned unless there is an abuse of discretion. *See State v. Hepple,* 279 Md. 265, 270–71, 368 A.2d 445 (1977).

> [A]n orderly conducted criminal trial anticipates the State adducing all of its evidence in chief and resting its case. The defense follows by producing its evidence tending to establish the accused's nonculpability, which includes the contradiction or rebuttal of the evidence offered by the State. Then the State is afforded an opportunity to produce its rebuttal evidence.

*Mayson v. State,* 238 Md. 283, 288–89, 208 A.2d 599 (1965). In *Hepple,* 279 Md. at 270–71, 368 A.2d 445, the Court of Appeals reviewed the evidentiary principles regarding the admissibility of testimony offered by the State at the rebuttal stage:

It should be made clear from the outset that there are two distinct types of evidence which may be adduced at this point in the proceedings: (1) rebuttal evidence, which the State ordinarily has a right to have received, and (2) evidence which should have been adduced during the State's case in chief, but which the trial court, in the exercise of its discretion to vary the order of proof, may allow at the rebuttal stage. Rebuttal evidence "includes any competent evidence which explains, or is a direct reply to, or a contradiction of, any new matter that has been brought into the case by the defense." *Mayson v. State,* 238 Md. 283, 289 [208 A.2d 599] ... (1965); *Lane v. State,* 226 Md. 81, 90 [172 A.2d 400] ... (1961), *cert. denied,* 368 U.S. 993 [82 S.Ct. 611, 7 L.Ed.2d 529] (1962). Our cases are clear that the question of what constitutes rebuttal testimony rests within the sound discretion of the trial court, *Mayson v. State, supra* [238 Md.] at 289 [208 A.2d 599]; *Lane v. State, supra* [226 Md.] at 90 [172 A.2d 400] ..., and that the court's ruling should be reversed only where shown to be both "manifestly wrong and substantially injurious." *Mayson v. State, supra* [238 Md.] at 289 [208 A.2d 599]; ...; *Kaefer v. State,* 143 Md. 151, 160 [122 A. 30] (1923); 3 J. Poe, *Pleading and Practice* § 287 (6th ed. H. Sachs 1975). Even if the trial court clearly rules that certain testimony is not rebuttal evidence, the court may nonetheless exercise its discretion to vary the order of proof and admit it as part of the case in chief at the rebuttal stage in order to meet the requirements of a particular case, *so long as this action does not impair the ability of the defendant to answer and otherwise receive a fair trial.* Such deviations from the general rule regarding the order of presentation of evidence are likewise in the sound discretion of the trial court. *Rickards v. State,* 129 Md. 184, 191 [98 A. 525] ... (1916); *Bannon v. Warfield,* 42 Md. 22, 39 (1875); 6 J. Wigmore, *Evidence* § 1867 (J. Chadbourn rev. 1976). This distinction was made clear by Chief Judge Orth (now a judge of this Court) in his opinion for the Court of

Special Appeals, [*Hepple v. State*] 31 Md.App. [525] at 534 [358 A.2d 283] [(1976)] ...:

> The two discretions enjoyed by the trial court, the one to permit the moving party to reopen its case to introduce evidence adducible in chief, and the other, to determine whether evidence offered to rebut is truly rebuttal evidence, are separate and distinct. As to both, of course, the evidence must be competent, relevant and material. With respect to reopening the case, the judge must consider whether the State deliberately withheld the evidence proffered in order to have it presented at such time as to obtain an unfair advantage by its impact on the trier of facts. To this end the judge must see whether the proposed evidence is merely cumulative to, or corroborative of, that already offered in chief or whether it is important or essential to a conviction. With respect to rebuttal evidence, the judge must consider whether the evidence explains, or is a direct reply to, or a contradiction of, any new matter that has been brought into the case by the accused. Thus, the considerations involved in the exercise of the two discretions are materially different. The sound exercise of discretion to allow the State to reopen its case provides no basis for finding that evidence meets the definition of rebuttal evidence, and *vice versa.* [(Footnotes omitted.)]

In the case *sub judice*, the trial court did not properly exercise its discretion to deviate from the conventional order of producing evidence. The State presented its case in chief. The defense then presented its case. The State's Attorney attempted to use Knight as a rebuttal witness. The trial court properly ruled that Knight's testimony was, for the most part, not rebuttal evidence, and that he should have testified during the State's case in chief. The trial court opined that the State knew about the witness before it rested and deliberately failed to disclose the witness. In other words, the lower court concluded that the State withheld the evidence proffered in order to have an unfair

advantage by its impact on the trier of facts. The court further concluded that the State should have disclosed the witness to defense counsel.

█ Even if the lower court determines that certain testimony is not rebuttal evidence, the court may nonetheless exercise its discretion to vary the order of proof and admit it as part of the case in chief at the rebuttal stage in order to meet the requirements of a particular case, so long as that action does not impair the ability of the defendant to answer and otherwise receive a fair trial. Although the tenor of the court's remarks intimate a belief that the prosecution acted inappropriately, the judge should have specifically stated for the record whether she believed the State's actions in withholding the evidence were a deliberate attempt to have an unfair advantage by the impact of the evidence on the trier of facts or whether the conduct was the result of ineptitude. In the case *sub judice*, the State's Attorney admitted that she knew of the existence of the witness days before the testimony and during the State's case in chief. The State's Attorney admitted that the State did not disclose the witness because she wanted to reserve Knight's testimony for rebuttal. The prosecutor apologized to the court for her erroneous belief that Knight could be used as a rebuttal witness. The court then prompted the assistant State's Attorney to reopen her case in chief, whereupon she then moved to reopen her case in chief. The lower court granted the State's motion. The trial court accepted the State's representation that it learned of the witness only once trial commenced.

█ In allowing the State to reopen its case in chief, the trial court stated that the testimony was relevant and material and that the jury should be allowed to hear the testimony. The trial court failed, however, to find whether the State deliberately or through ineptitude secured an unfair advantage by the impact of the order of proof on the trier of facts as a consequence of withholding the evidence proffered. The trial court further failed to assess whether

the impact of allowing the State to reopen its case substantially impaired the right of the defense to map out its trial strategy, thus implicating the ability of both defendants to receive a fair trial. We hold the record demonstrates the defense was so impaired.

Knight's testimony was important to the prosecution because it directly refuted appellants' claim that neither were present at the scene of the fateful gunfire, even though Knight could only identify Snead conclusively. The trial court should have been "alert in preventing the State from deliberately withholding a part of its testimony (such as that which is merely cumulative to, or corroborative of, that already in chief) in order to have testimony favorable to its case repeated at the end of the trial for the effect that it may have upon the trier of facts." *Hepple v. State,* 31 Md.App. 525, 532, 358 A.2d 283 (1976) (citations omitted). The court erred in permitting the State to reopen its case in chief and permitting Knight to testify without considering whether the State's action in withholding the evidence proffered resulted in the State obtaining an unfair advantage by its impact on the trier of facts, and the court further erred in not assessing the ability of appellants to receive a fair trial in light of such impact. We cannot, upon reviewing the record, " 'declare a belief beyond a reasonable doubt, that the error [in offering non-rebuttal evidence in the rebuttal case] in no way influenced the verdict.' " *State v. Hepple,* 279 Md. at 273, 368 A.2d 445, quoting *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). Accordingly, we shall reverse the ruling of the trial court.

JUDGMENT REVERSED; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.