637 A.2d 1214

**STATE of Maryland**

v.

**Donald E. BOOZE and Alan Snead**

**No. 32, Sept. Term, 1993.**

Court of Appeals of Maryland.

March 11, 1994.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,\* CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue presented in this case requires us once again to test the limits of a trial court's discretion to permit the State to reopen its case in chief at the rebuttal stage of the trial. The Circuit Court for Baltimore City permitted the State to reopen its case at that stage of the trial to present the testimony of a witness, about whom, including the contents of his testimony, it was aware before it closed its case. At the instance of the respondents, Donald Eugene Booze, Jr. and Allen Shelton Snead, the Court of Special Appeals held that ruling to be an abuse of discretion; consequently, that court reversed. *Booze v. State*, 94 Md.App. 331, 617 A.2d 642 (1993). Having granted the State's petition for writ of certio-

---

\* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

rari to review that decision, 330 Md. 458, 624 A.2d 954 (1993), we shall affirm.

## I.

[A]n orderly conducted criminal trial anticipates the State adducing all of its evidence in chief and resting its case. The defense follows by producing its evidence tending to establish the accused's nonculpability, which includes the contradiction or rebuttal of the evidence offered by the State. Then the State is afforded an opportunity to produce its rebuttal evidence.

*Mayson v. State*, 238 Md. 283, 288–89, 208 A.2d 599, 602 (1965). The rationale for this procedure was enunciated much earlier:

The observance of fixed rules upon the subject [of the orderly manner in which parties are required to introduce their evidence in support of the issues to be tried] is of great importance, not only as a means of avoiding confusion, but to the fair administration of justice. Much of course depends upon the form of the issues joined, and upon whom the *onus* rests. The parties must not be allowed to break up the evidence they may intend to offer on any particular issue, and introduce it at different stages of the cause in piecemeals, as the varying emergencies of the case may seem to require. Such practice would not only greatly prolong trials, but would frequently lead to surprise and injustice. According to the well established practice, the plaintiff, having the right to begin, must put in the whole of his evidence upon every point or issue which he opens, and the defendant then puts in evidence his entire case; and in reply the plaintiff is limited to such new points and questions as may be first opened by the defendant's evidence. From this general rule there may be departures to meet the requirements of particular cases; but the entire question, as to the mere order of proof, and under what circumstances evidence should be admitted or rejected when offered out of the proper order, in the absence of some positive rule of

court upon the subject, must be allowed to rest upon the discretion of the court directing the trial, as the tribunal best qualified to judge what the justice of the case may require in these respects. . . .

*Bannon v. Warfield,* 42 Md. 22, 39 (1875) (citations omitted). *See Mayson,* 238 Md. at 288–89, 208 A.2d at 602. *See also Baltimore, C & A Railway Company v. Moon,* 118 Md. 380, 393, 84 A. 536, 540 (1912).

■ It is well-settled that trial courts are vested with broad discretion in the conduct of trials, *Hunt v. State,* 321 Md. 387, 405, 583 A.2d 218, 227 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *McCray v. State,* 305 Md. 126, 133, 501 A.2d 856, 860 (1985); *Fleming v. Prince George's County,* 277 Md. 655, 679, 358 A.2d 892, 905 (1976), including in two areas that are relevant to the resolution of the case *sub judice.* In the usual case, what constitutes rebuttal testimony rests within the sound discretion of the trial court, *Thomas v. State,* 301 Md. 294, 309, 483 A.2d 6, 14 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Huffington v. State,* 295 Md. 1, 14, 452 A.2d 1211, 1217 (1982); *State v. Hepple,* 279 Md. 265, 270, 368 A.2d 445, 449 (1977); *Mayson,* 238 Md. at 288–89, 208 A.2d at 602; *Lane v. State,* 226 Md. 81, 90, 172 A.2d 400, 405 (1961), *cert. denied,* 368 U.S. 993, 82 S.Ct. 611, 7 L.Ed.2d 529 (1962), whose ruling may be reversed only when it constitutes an abuse of discretion, *i.e.,* it has been shown to be both "manifestly and substantially injurious." *Mayson,* 238 Md. at 289, 208 A.2d at 602. *See State v. Hepple,* 279 Md. at 270, 368 A.2d at 449; *Kaefer v. State,* 143 Md. 151, 160, 122 A. 30, 33 (1923); 2 Poe, *Pleading and Practice* § 287, at 249 (Tiffany ed. 1925).

■ The decision whether to vary the prescribed customary order of proof is a matter that is also addressed to the trial court's discretion. *State v. Hepple,* 279 Md. at 270, 368 A.2d at 449; *Snowhite v. State Use of Tennant,* 243 Md. 291, 306, 221 A.2d 342, 351 (1966); *Mayson,* 238 Md. at 289, 208 A.2d at 602; *Lane,* 226 Md. at 90, 172 A.2d at 405; *Baltimore C & A Railway v. Moon,* 118 Md. at 393, 84 A. at 540; *Bannon,* 42

Md. at 39. *See* Wigmore, *Evidence* § 1867, at 655–660 (6th ed. 1976). Thus, after it has rested, a trial court may permit the State to reopen its case, at the rebuttal, or other, stage of trial, and admit evidence which more properly should have been adduced in the State's case in chief. *State v. Hepple,* 279 Md. at 271, 368 A.2d at 449. That action will not constitute an abuse of discretion "so long as [it] does not impair the ability of the defendant to answer and otherwise receive a fair trial." *Id.* at 270, 368 A.2d at 449.

The two discretions—to determine what evidence is rebuttal evidence and to vary the order of proof—are separate and distinct. *Hepple v. State,* 31 Md.App. 525, 534, 358 A.2d 283, 290 (1976), *aff'd, State v. Hepple,* 279 Md. 265, 368 A.2d 445 (1977). And the factors that inform their exercise are also materially different. With regard to the latter,

> the judge must consider whether the State deliberately withheld the evidence proffered in order to have it presented at such time as to obtain an unfair advantage by its impact on the trier of facts. To this end the judge must see whether the proposed evidence is merely cumulative to, or corroborative of, that already offered in chief or whether it is important or essential to a conviction.

*Id.* Other factors which have been identified as important to the assessment of the propriety of the trial court's exercise of discretion to vary the order of proof include:

> Whether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature; and, whether the reopening is at the request of the jury or a party.

*Dyson v. State,* 328 Md. 490, 502, 615 A.2d 1182, 1188 (1992), citing *State v. Thomas,* 179 W.Va. 811, 374 S.E.2d 719, 722 (1988).[1] Moreover, there is merit to having a predictable trial

---

1. Although *Dyson v. State,* 328 Md. 490, 615 A.2d 1182 (1992), involved the reopening of the State's case after the jury had begun deliberations,

pattern, *People v. Olsen*, 34 N.Y.2d 349, 357 N.Y.S.2d 487, 489–92, 313 N.E.2d 782, 784–85 (1974); "the presentation of evidence must come to an end at some time, and the parties must be forewarned that the desirability of maintaining an orderly trial process militates strongly against receiving evidence" out of turn. *Dyson*, 328 Md. at 503, 615 A.2d at 1188. Furthermore, "[a] premium must necessarily be placed on preparation and diligence." *Id.* The proper inquiry with respect to rebuttal evidence is "whether the evidence explains, or is a direct reply to, or a contradiction of, any new matter that has been brought into the case by the accused." *Hepple v. State*, 31 Md.App. at 534, 358 A.2d at 290.

No matter how much discretion a court may have to vary the order of proof or to admit rebuttal evidence, a court may not exercise either discretion interchangeably with the other. In other words, to uphold an exercise of discretion by the trial court, it must be clear that the trial court was indeed exercising the particular discretion it purported to exercise. *Huffington v. State*, 295 Md. 1, 15, 452 A.2d 1211, 1217 (1982); *Mays v. State*, 283 Md. 548, 553–55, 391 A.2d 429, 431 (1978).

As we have seen, the normal rule "is that the plaintiff will be required to go fully into his own case-in-chief on [those] issues as to which he holds the substantial affirmative, and where, therefore, the burden of proof rests on him; and hence, in reply to the case made by the defendant, he will ordinarily be limited to what is strictly rebutting evidence," Poe, *supra*, § 287, at 249 (footnote omitted), but that there are exceptions necessitated by the requirements of particular cases. *Id.* Those exceptions should truly be extraordinary; the trial court should be reluctant to grant reopenings. *Dyson*, 328 Md. at 502–03, 615 A.2d at 1188; *United States v. Billingsley*, 474 F.2d 63, 67 (6th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973). This is so because "of the desirability of maintaining an orderly trial" and "the very strong probability" that the trier of fact will give undue emphasis or

---

the factors it identified also apply whenever the State's case is permitted to be reopened.

prominence to evidence offered on reopening at the rebuttal stage of trial. *Dyson,* 328 Md. at 503, 615 A.2d at 1188.

## II.

The respondents were charged with the murders of Antonio Brandon Henderson and Isaac Durant and related offenses. Notwithstanding that the State was required to disclose, without request, "pretrial identification of the defendant by a witness for the State," Maryland Rule 4–263(a), on the day before the scheduled trial date, the State had disclosed only that it would furnish those witnesses at a later date. The respondents, thereupon, filed a motion to compel discovery. Following a hearing conducted by the judge in charge of criminal matters, the State was ordered to disclose the names of its pretrial identification witnesses to the respondents' counsel, but not to the respondents.[2] In pretrial proceedings, conducted before the trial court over the next three days, defense counsel interviewed the State's identification witnesses. Trial began on November 21, 1991.

The State's case lasted until November 25, 1991. Three of the State's witnesses placed each of the respondents in possession of a handgun. Two of those witnesses, Michael Brooks and Jaquetta Jones, testified to seeing the respondents fire those guns. Indeed, Miss Jones said that she saw each respondent fire two shots. The third witness, Dante Jones, said that he saw each respondent with a gun and heard shots, but denied seeing the respondents fire their weapons. Another State's witness, Officer Constantine, testified to encountering the respondent Snead fleeing from the area of the shooting and to hearing, at that time, gun shots coming from the direction from which Snead was running.

---

**2.** At that hearing, the State sought a protective order to allow it to withhold the names until the witnesses testified. It also explained that it delayed in disclosing the names of the identification witnesses because it was attempting to develop information to support its motion for a protective order. The judge in charge of criminal matters granted the State's requested relief, in part, *i.e.,* by prohibiting the witnesses from being interviewed in the presence of, or disclosed to, the respondents.

After the State rested its case, the respondent Booze also rested; however, the respondent Snead called two witnesses. The theory of Snead's defense was that the respondents were fleeing from a gun battle in which they were in no way involved. One of Snead's witnesses, Catherine Bennett, testified that she saw Snead running after hearing gunshots. She also testified that the gunshots were being fired at the respondent Snead. His other witness, Laurie Ward, stated that she was with the respondents when the shooting started. She denied that either respondent had a gun. Snead's theory of defense, which applied equally to Booze, was, of course, supported by Officer Constantine's testimony.

The State presented a rebuttal case. One of its rebuttal witnesses was Perry S. Knight, the nephew of one of the victims. When it became apparent that Knight was an eyewitness to the shooting, the respondents objected, arguing that his testimony was not proper rebuttal evidence. The State's response was that Knight's testimony, because it accounted for the gunshots that were fired while the respondents were running from the scene, directly rebutted the defense theory that the respondents were fleeing from a gun battle in which they were not involved. Having discovered that the State learned of Knight prior to closing its case—Knight's statement was dated November 21—the court accepted that, to the extent that his testimony explained the source of the gunfire from which the respondents were fleeing, it was proper rebuttal; however, it was concerned about the rest of his testimony. As to that, the court determined that "it was not proper rebuttal because it is direct—it is evidence you should have put on in your case-in-chief." As to why the State offered that testimony in rebuttal, as opposed to in its case-in-chief, and the court's reaction to that explanation, the following colloquy is revealing:

[The Prosecutor]: Your Honor, because I needed—I—I had to see—see, I could tell by the way they were putting on their defense that they were going to try to say that there was a gun battle going up the street and that that— The Court: I understand that,—

[The Prosecutor]: But I was not—

The Court: —but this witness—

[The Prosecutor]: But I was not sure so I had to wait to see that that was their defense.

The Court: Oh, come on now.

      \*      \*      \*      \*      \*      \*

The Court: You have got to be pretty thick—

It having been determined that Knight's testimony was not proper rebuttal, for the most part,[3] the State requested, at the trial court's suggestion, that its case be reopened. The court granted its motion even though the court believed that the State "should have . . . put him on as part of your case—which was closed today" and that "it was a terrible mistake in judgment of you to hold him back until the end of the trial." When defense counsel, objecting to the ruling, asked why the State should be allowed to reopen its case, the court replied, "[b]ecause they are. I mean, I can use my discretion—I think [the prosecutor] used bad judgment by springing it this way instead of putting it on as a part of [her] case-in-chief." Later, it also mused, "Now the next question is do you deny the State the right to call a witness because a witness was not called and the soonest he would have been would have been this morning before the rebuttal witnesses—I mean, before the defense witnesses that you produced," noting that the amount of prejudice under the circumstances was considerably less than it could have been had the evidence been offered after a lengthy defense case. In this case, Knight's testimony was presented on the same day that the State closed its case and after only two witnesses and two hours of defense testimony. After further discussion, during which it referred to *Mays*, 283 Md. 548, 391 A.2d 429, as supportive of its position, the trial court observed: "the only critique I have of the State over this and it is not serious is that they should have put him on this morning before they closed their case and not waited

---

**3.** The court referred to that portion of the testimony that was proper rebuttal as constituting "just a little quarter of this case."

until after one of the defendants made a defense." On the other hand, the trial court quite candidly stated:

> Look. Their reasons are phony. I do not accept them. It is improper rebuttal and she is wrong and she should not have done it, but that does not mean that the jury has to be deprived of relevant evidence. That is not the way to punish the State or the defense for that matter for not putting on the evidence when they should have.

### III.

In this case, we are not called on to determine whether the trial court, in fact, exercised its discretion to reopen the State's case. The record is crystal clear in that regard, that the trial court purported to, and intended, to vary the order of proof—to reopen the State's case. Indeed, the court recognized, early on, that the bulk of the testimony Knight would give was not rebuttal at all; rather, it was "direct" testimony which should have been offered in the State's case-in-chief. In short, the court clearly recognized the distinction between exercising its discretion to determine what is rebuttal evidence and reopening the State's case to receive evidence properly adducible in chief and purported to exercise the latter. Thus, as the trial court recognized, this case is very much like *Mays*. That, however, does not end the inquiry.

Whether the trial court abused its discretion in varying the order of proof was not an issue in *Mays*. Rather than the propriety of its exercise, the question addressed was whether the court, in fact, exercised its discretion to reopen the State's case. Whether, in varying the order of proof, a trial court abused its discretion must be determined from the totality of the circumstances. More particularly, the inquiry must be directed at determining whether, by permitting the State's case to be reopened, the defendant's ability to receive a fair trial has been impaired. This, in turn, requires consideration of the nature of the evidence, *i.e.*, whether it is cumulative or

corroborative of other evidence already adduced by the State in its case-in-chief, the reason for the timing of the offer of the evidence, and, of course, the effect of its late admission into evidence.

Although aware, since the first day of trial, of Knight, an eyewitness to the murders, as well as the substance of his testimony, the State presented its case without that testimony, opting to hold it for rebuttal; the State intentionally chose to forego using Knight's testimony in its case-in-chief for use later in the proceedings, in the event that the respondents offered a defense.[4] One of the respondents, Snead, did offer a defense, in which he took advantage of an aspect of the State's case that was favorable to his defense, *i.e.*, Officer Constantine's testimony that, when he encountered Snead fleeing the area, he heard gunshots coming from the same direction as Snead. The State then sought to "spring" Knight's testimony into the case as rebuttal evidence. The court recognized that,

---

4. It is curious that the State would hold back eyewitness testimony, for use in rebuttal, that not only corroborates other eyewitness evidence, but also fills in the sizeable gap Officer Constantine's testimony created in the State's case. While clearly admissible in the case-in-chief, the State could not be sure that it would be admitted at a subsequent stage of trial. In the absence of advance knowledge that one of the defendants would present a defense and some idea of what that defense would be, the State ran a substantial risk that the testimony would not rebut anything offered by the defense. While, in this case, the State may have known that Snead would present a defense, it is not clear that it knew what that defense would be. Of course, because it is discretionary with the court and, then, only when cause for exercising the discretion exists, the State simply could not be assured that it would be allowed to reopen its case.

It is also difficult to imagine eyewitness testimony ever being proper rebuttal. Rebuttal evidence explains, replies to or contradicts new matters presented by the defendant. *See Thomas v. State*, 301 Md. 294, 309, 483 A.2d 6, 14 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Mayson,* 238 Md. at 289, 208 A.2d at 602; *Lane,* 226 Md. at 90, 172 A.2d at 404; *Kaefer,* 143 Md. 151, 122 A. 30. Testimony describing the very incident for which the defendant is on trial does not meet this definition, even though the defendant denies guilt and produces evidence to that effect in defense. The denial of guilt is not, in any event, new matter presented by the defendant. But even if it were, testimony that more properly is adducible in the State's case-in-chief does not explain, reply to, or contradict it.

for the most part, the testimony was not rebuttal [5]; it rejected any notion that, other than the establishment of the source of the "third" gunfire burst, any part of the testimony was rebuttal evidence. The court specifically held that the testimony reflected an eyewitness account of what occurred, it was "direct" evidence, properly presented in the State's case-in-chief. Nevertheless, and notwithstanding its belief that the State knew as much about the respondents' defense before it closed its case as it knew when it offered Knight as a rebuttal witness, in the exercise of discretion, the trial court permitted the State to reopen its case to receive his testimony. The only explanation it gave was that depriving the jury of relevant evidence "is not the way to punish the State or defense for that matter for not putting on evidence when they should have."

The critical issue is whether the reopening of the State's case impaired the ability of the defendant to answer and otherwise receive a fair trial. As *State v. Hepple,* 279 Md. at 271, 368 A.2d at 449 (quoting *Hepple v. State,* 31 Md.App. at 534, 358 A.2d at 290), points out, that question is answered by reference to the State's intention in withholding the evidence, *i.e.,* whether it did so in order to gain an unfair advantage from the impact later use of the evidence likely would have on the trier of facts, the nature of the evidence, and its relationship to evidence already in the case. Necessarily involved in the first consideration is whether there is a good faith, or at least, reasonable, basis for withholding the evidence—whether the State had good cause for doing so. The trial court's conclusion in this regard varied and, thus, is unclear. On the one hand, it said that the State had used bad judgment in

---

5. There is a real question as to whether any part of Knight's testimony is rebuttal evidence. Had Knight been called as a witness in the State's case-in-chief, he would have established the continuity of the incident, *i.e.,* that he saw the respondents shoot the victims and flee and that he fired at them. His testimony would, in other words, have contradicted that testimony which seemed to indicate that there were three distinct bursts of gunfire, thus, precluding, or, at least, undermining in advance, Snead's defense. Therefore, no part of that testimony may properly be characterized as rebuttal evidence.

withholding the evidence for use as rebuttal, perhaps implying that it did not act in bad faith. On the other hand, however, it characterized the State's reasons for withholding the evidence as "phony." What is clear is that the trial court determined that the State was aware of Knight's testimony, and its importance, before it closed its case, that, in other words, the State's failure to call Knight in its case in chief was intentional, rather than inadvertent. While, perhaps, not bad faith, misconceiving the nature of the evidence and the stage of the proceedings at which it is admissible is not necessarily acting in good faith and, in this case, it does not constitute good cause for reopening the State's case. So holding would put a premium on ignorance and lack of preparation rather than on diligence and preparation. Indeed, if all that is required to vary the order of proof is ignorance or lack of preparation, then the desirability of an orderly and predictable trial pattern will be lost and taking evidence out of turn may become the rule, rather than the exception.

██ Knight's testimony, as we have seen, did not explain, directly reply to, or contradict new matters introduced by the respondents. Rather, it is cumulative to, and corroborative of, evidence that the State itself produced in its case in chief. Knight was but another eyewitness to the events. Although he identified only Booze, he testified to there being two gunmen. Thus, his description of the incident corroborated the testimony of the other eyewitnesses. On the other hand, given the defense presented by Snead, Knight's testimony took on added importance. Indeed, it may well have been critical to the State's obtaining convictions.

The respondents' defense, as presented by Snead, used an ambiguity in the State's case to attempt to convince the jury that they were not the murderers, or at least, create a reasonable doubt in that regard. The ambiguity—that there were several distinct "bursts of fire"—would not have been available had Knight testified in chief. That a defendant builds a defense on an ambiguity in the State's case does not license the State to use direct evidence, of which it was fully

aware before closing its case, to explain away that ambiguity. Moreover, because it filled a gap in the State's case, of which the respondents took advantage, and even though the testimony was not proper rebuttal, the effect of Knight's testimony was to rebut the respondents' defense. And because it was rather dramatic testimony coming after the respondents' defense had been presented, such evidence is quite likely to be given undue emphasis by the trier of fact. The trial court did not consider this factor when it allowed the State to reopen its case. Moreover, and, in any event, it did not consider the prejudicial impact, or probable prejudicial impact, of Knight's testimony on the trier of fact at all. Thus, it did not directly address, if at all, the likelihood that Knight's testimony would render a fair trial impossible for both of the respondents.[6]

---

**6.** The Court of Special Appeals opined:

Although the tenor of the court's remarks intimate a belief that the prosecution acted inappropriately, the judge should have specifically stated for the record whether she believed the State's actions in withholding the evidence were a deliberate attempt to have an unfair advantage by the impact of the evidence on the trier of facts or whether the conduct was the result of ineptitude. *Booze v. State*, 94 Md.App. 331, 341, 617 A.2d 642, 647 (1993). The State argues that the intermediate appellate court thereby incorporated into its review of a trial court's decision to vary the timing of the receipt of evidence, a requirement, not mentioned by *State v. Hepple*, 279 Md. 265, 368 A.2d 445 (1977), that the trial court specifically state on the record whether it found that the State deliberately withheld the challenged evidence to obtain an unfair advantage or that the defense's right to a fair trial was substantially impaired. We read the court's opinion to require simply that the record reflect the basis for the trial court's ruling. When the record does not, an appellate court properly may, as the Court of Special Appeals did in this case, find that the trial court abused its discretion.

The intermediate appellate court also stated: "[w]e hold the record demonstrates the defense was [substantially] impaired." *Booze*, 94 Md.App. at 342, 617 A.2d at 647. The State asserts that the Court of Special Appeals, in actuality, substituted its judgment for that of the trial court. To the extent that this holding represents fact finding by the intermediate appellate court, the State is correct. We believe, however, the more appropriate interpretation of the intermediate appellate court's holding is that there was no evidentiary support for any conclusion other than that the respondents were denied a fair trial. Thus, the observation the intermediate appellate court made immediately after stating that "holding," is instructive:

We hold that the trial court abused its discretion when it allowed the State to reopen its case, over the respondents' objection. Not only was the request made by the State, but the only reason for it was the State's withholding of evidence, which it believed, erroneously, it turned out, to be rebuttal evidence. Because it was not, and to be relevant, the entirety of the eyewitness account, which merely corroborated, and was cumulative to, the State's initial evidence, had to be offered, the timing of that testimony was likely to be given undue emphasis to the respondents' prejudice. In this case, Knight's testimony also clears up an ambiguity which its omission allowed the defense to exploit. For that reason as well, the evidence took on added significance, which the jury would likely credit.

The State argues that the trial court, both explicitly and implicitly, made the requisite findings to sustain its exercise of discretion: that the State did not act in bad faith and that the short interval between when the evidence should have been offered and when it was, did not substantially prejudice the respondents. As to the intent or motive prong, the State relies largely on the prosecutor's explanation for holding back Knight's testimony. As we have previously noted, what the trial court found in this regard is far from clear. To the extent that its comments may support a conclusion that the court found that the prosecutor did not act in bad faith, that conclusion is belied by the court's characterization of the prosecutor's reasons for holding Knight for rebuttal as "phony." In any event, as we have pointed out, not acting in bad faith is not the same as acting in good faith and/or with good cause.

The court erred in permitting the State to reopen its case-in-chief and permitting Knight to testify without considering whether the State's action in withholding the evidence proffered resulted in the State's obtaining an unfair advantage by its impact on the trier of facts, and the court further erred in not assessing the ability of appellants to receive a fair trial in light of such impact.

*Id.* at 342, 617 A.2d at 647.

█ Recognizing that a determination under the motive or intent prong alone is not dispositive, the State also argues that the trial court explicitly found that reopening the State's case would not render the respondents' trial unfair. It points out that the trial court noted that Knight would testify on the same day and just two witnesses and two hours after the State's case in chief. This suggests, the State maintains, that the trial court determined that the defense was not prejudiced by the late presentation of Knight's testimony. Conceding the State's point, we still are not persuaded. While the length of the defense case and, hence, the interval between when the testimony should have been given and when it was, may be a factor to be considered in determining whether the defense was prejudiced, it certainly is not the only one and, indeed, perhaps not even the most important.

The prosecutor elected not to offer Knight's testimony in chief, not because it was not relevant or probative, but because she erroneously believed it to be proper rebuttal evidence. As we have seen, however, that testimony was not proper rebuttal and, by not offering it in chief, the State allowed an ambiguity to exist, of which the respondents sought to take advantage. Therefore, in this case, of more importance than the number of witnesses the defendant may have called or the length of the defense case is the nature of the defense presented. When a defendant responds to the case it presents, the State may not reopen its case simply to reiterate its case so as to have the last word. Where the State withholds evidence, erroneously believing it to be proper rebuttal, but subsequently finds that it is not, that is the precise effect of allowing the State to reopen its case. The only conceivable basis for Knight's testimony was to rebut Snead's defense. Once it was determined that it could not be used for that purpose because it was not proper rebuttal evidence, reopening the State's case effectively served the same purpose. The State was permitted unfairly to piecemeal its case; the defendants having defended based upon the facts and circumstances which the State, itself, proved, but knew, at the time, were not complete, to allow the

State thereafter to offer the clarifying evidence is prejudicial as a matter of law.

It is true, of course, that the trial court offered the respondent Booze, who did not initially present a defense, the opportunity to reopen his case to present one in response to the State's reopening of its case. Indeed, the court expressed a willingness to continue the case, including Knight's testimony, at Booze's option, in order to facilitate and enhance his preparation to meet that testimony. To be sure, the extent to which a defendant is given an opportunity to rebut the challenged evidence is a proper consideration in the determination of whether that defendant has been afforded a fair trial, and, hence, the propriety of the court's exercise of discretion to admit the evidence. *Dyson*, 328 Md. at 504–05, 615 A.2d at 1189. Nevertheless, and in addition, the court must also consider whether the prejudicial impact of the admission of the challenged testimony is such as to undermine the defendant's right to a fair trial; the fact that the trial court affords a defendant a procedure and an opportunity to meet challenged evidence is of little comfort when the very effect of allowing the evidence is to render the trial unfair.

The argument that Snead was not prejudiced is likewise without merit. That Knight did not identify Snead, a fact noted by the trial court and acknowledged by Snead's counsel, is not dispositive. What the argument overlooks is that Knight's testimony was corroborative of the testimony of the other State's eyewitnesses. It was not necessary, therefore, that Knight identify Snead; it was sufficient that Knight's testimony painted a picture very much like that already painted by witnesses who had, theretofore, identified Snead as one of the shootout's participants. Again, it is the nature of the evidence, *i.e.*, that it is cumulative and corroborative, that is significant, not whether the details provided by Knight's testimony are sufficient to establish the respondents' guilt without reference to any other evidence.

The cases upon which the State relies are distinguishable from the case *sub judice* and, therefore, inapposite. In each

of them, *see United States v. Alderete*, 614 F.2d 726, 727 (10th Cir.1980); *United States v. Ard*, 544 F.2d 225, 226–27 (5th Cir.1976); *United States v. Mason*, 68 F.R.D. 619, 629 (D.Md. 1975); *Jones v. State*, 2 Md.App. 356, 362–64, 234 A.2d 625, 628–29 (1967), save one, *Snowhite*, 243 Md. at 306, 221 A.2d at 351–52, the State's case was reopened prior to the start of the defendant's case, but after the defendant's motion for judgment of acquittal had been denied, and in all but one, *Jones, supra*, in order to allow the State to introduce evidence inadvertently omitted. In *Jones*, no abuse of discretion was found when the trial court determined that the State had just "goofed." In *Snowhite*, the witness for the taking of whose testimony the plaintiff's case was reopened, was located just prior to the end of trial and his testimony was partly rebuttal evidence. By contrast, in the case *sub judice*, the State knew of Knight's existence and the substance of his testimony on the first day of trial, but chose, intentionally, not to use him until rebuttal, on the mistaken belief that his testimony was rebuttal evidence.

*JUDGMENT AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MAYOR & CITY COUNCIL OF BALTIMORE.*