WILLEY, Etc. AND WILLEY *v.* GLASS

[No. 241, September Term, 1965.]

158 

 ██

*Decided April 1, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, BARNES and McWILLIAMS, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Gerald N. Klauber* for appellants.

*James M. Gabler,* with whom were *Barbara Ann Spicer* and *Smith, Somerville & Case* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Suit was instituted in the Superior Court of Baltimore City by plaintiffs Sharon Willey, a minor, by Gordy Willey, her father and next friend, and Gordy Willey, individually, against Benny Calvin Glass to recover for personal injuries sustained when the minor child was struck by an automobile driven by defendant Glass. The case was tried before a jury, Judge Harlan presiding, and at the conclusion of all of the evidence the trial

judge directed a verdict in the defendant's favor on the ground that no primary negligence had been shown. The plaintiff unsuccessfully made a motion for a new trial in which he claimed that three errors were made by the trial judge. These same points are raised on this appeal, which was taken after judgment had been made absolute for the defendant.

At the trial the infant plaintiff testified that on April 2, 1962, she and some other youngsters were playing dodge ball in front of her home, located on the north side of Fountain Street in Baltimore City. The ball rolled across Fountain Street (thirty-six feet in width) and came to rest at the south curb between two parked vehicles, a car and a tractor trailer, and Sharon, then eight years of age, went to retrieve it. After picking up the ball and emerging from between the parked vehicles, she looked to her left to see if there was any eastbound traffic on Fountain Street but her view of traffic from that direction was blocked by another truck which was backed at a right angle to the south curb of Fountain, into the entrance of a junk yard, and the truck's cab extended to the middle of the street. She then looked to her right to see if there was any westbound traffic and seeing none, walked across the street to rejoin the game. According to her testimony she did not remember whether she looked again to see if there was any traffic coming from her left but she did remember that when she got to the middle of the street she was hit by the defendant's eastbound car which she did not see until after she was struck.

At the trial it was uncontroverted that the child had attempted to cross the street between intersections, that the weather conditions on the date of the accident were dry and clear, that the accident occurred at about 3:45 p.m., and that the defendant's car made no skid marks.

The plaintiffs called as a witness an officer of the Baltimore Police Accident Investigation Division, who testified that he arrived at the scene of the accident some twenty minutes after its occurrence. On cross-examination he was allowed to read, over objection of plaintiffs' attorney, a signed statement given to him by the defendant Benny Glass at the scene of the accident. The statement was as follows: "At 3:45 p.m., on April 2, 1962, I was operating my vehicle, a Ford, 1956, eastbound

on Fountain Street. When about one-half way through the block, a child ran out from between a car and trailer that was parked at the south curb. I put on my brakes but still struck the child with my car at the right front." Neither the plaintiff Gordy Willey nor his wife Betty Willey, saw the accident, but were called as witnesses since they arrived at the scene soon afterwards. Gordy Willey testified that when he arrived at the scene of the accident the defendant's car was about one car length away from the truck which was blocking the eastbound lane of traffic on Fountain Street, and that the defendant's car was at an angle, with the front end in the eastbound lane and the rear end extending into the westbound lane. Mrs. Willey testified that the defendant's car was about two car lengths away from the blocking truck. The plaintiffs also called the defendant as their witness and he admitted that he knew that children played on the street in that area. He testified that he had to go into the westbound lane of Fountain Street to get around the truck backed into the entrance of the junk yard. On cross-examination he stated that he had maneuvered around that truck at a speed of five to ten miles an hour and that he was directed by the arm motions of an unidentified man who stood by the blocking truck. When cross-examination of the defendant was concluded the following colloquy took place between the trial judge and the plaintiffs' lawyer: "Mr. Klauber: That's all I have, except for the hospital report, your Honor. The Court: All right." At this juncture, after the jury was admonished by the court, the court adjourned, to resume at 10:00 a.m. the following morning.

The following took place in chambers, before the court resumed its session the next day:

"Mr. Klauber: The Plaintiffs in the case have proffered the testimony of a witness, Hazel Fletcher, which the Plaintiffs would like to call as their witness in the case of Willey versus Glass. The witness was not available yesterday, and there was no information as to whether she would be available today. She is now available, in Court, and the Court has refused to allow the Plaintiffs' attorney to call this witness in the Plaintiffs' case, on the theory that the Plaintiffs had closed their case yesterday.

"The Plaintiffs' attorney submits that the case was not closed; that further testimony was to be offered in the Plaintiffs' case, that of hospital records; and the Plaintiffs' attorney made no statement to the Court that they had rested their case. The only statement made to the Court was that that's all they had.

"The Court: Well, I assume that you are moving to reopen the case, to put on a witness?

"Mr. Klauber: Right.

"The Court: Let the record show that the Plaintiffs' counsel, at the conclusion of the testimony yesterday advised the Court that that was all he had, that that was the Plaintiffs' case, with the exception of the hospital record; that the Plaintiffs' counsel did not advise the Court of any other witness, nor does the record show that any witness was subpoenaed, until this morning; that after the Plaintiffs closed their case on the question of liability, there was a conference in chambers, whereupon each side argued the case as to the liability.[1]

"The Court, therefore, denies the motion to reopen the case." When the trial resumed the defendant then put on his case, which consisted only of his testimony in his own behalf. In his testimony he repeated what was contained in the written statement taken by the police officer and reiterated his testimony which he had given during the plaintiffs' case in chief. Additionally he testified that his brakes were in good condition, that the child was only three or four feet in front of him when he applied his brakes and that he stopped as soon as they were applied, and that he was in the eastbound lane of traffic going from ten to fifteen miles per hour when he first saw the girl "dart out."

After the defendant had testified, plaintiffs' counsel sought to call Hazel Fletcher as a rebuttal witness. The trial judge refused to allow her to testify and in his written opinion, filed

---

1. The record does not disclose that defendant's counsel had made a motion for a directed verdict at the close of the plaintiffs' case.

when he denied the motion for a new trial, he explained his action as follows:

> "In chambers previously, counsel for the plaintiff proffered the testimony of the witness. Although he did not make a proffer on the record, the proffer was to the effect that she could testify that the defendant started up quickly from a standing position some distance to the west and failed to reduce his speed, and that the plaintiff was struck while in the middle of the street.
>
> "The Court felt then and feels now that such testimony informally proffered would not be of any benefit to the infant plaintiff, as it would only corroborate the defendant's testimony other than the question of speed, in that the plaintiff came out from between parked cars. The Court felt then and feels now that there was no evidence of primary negligence on the part of the defendant * * * which warranted the Court in the action it took by directing a verdict for the defendant."

In this Court the appellants first contend that it was reversible error for the trial judge to allow the policeman to read the written statement taken from the defendant at the accident scene some twenty minutes after the child was struck. Appellants contend that the admission of the statement violates the hearsay evidence rule and was not within the *res gestae,* or any other, exception to that rule. Even assuming that this statement was not admissible for the purpose of proving the truth of the matter contained therein and that it does not fall within any of the exceptions to the hearsay evidence rule, its admission into evidence did not amount to reversible error because as we point out later there was offered no legally sufficient proof of primary negligence.

The appellants' counsel secondly strenuously urges that the trial judge erred in refusing to allow him to put on Hazel Fletcher as a witness in order to prove the existence of primary negligence. While he claims that he did not close his case in regard to the proof of liability at the end of the first day of trial, it seems clear to us from the statement made by plaintiffs'

counsel at that stage of the proceedings, plus the fact that the issue of primary negligence had been argued in chambers before plaintiffs' counsel sought to put Hazel Fletcher on as a witness, that the trial judge was correct in deciding that plaintiffs' counsel had actually closed his case as to the proof of liability. Whether a case shall be reopened for the taking of additional testimony rests within the sound discretion of the trial judge; and from his grant or refusal to grant the request to reopen, ordinarily no appeal will lie. *Schroder v. State,* 206 Md. 261, 265, 111 A. 2d 587; *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 620, 51 A. 2d 292; *Niemoth v. State,* 160 Md. 544, 554, 154 Atl. 66; *Hensel v. Smith,* 152 Md. 380, 391, 136 Atl. 900; *East Balto. Transfer Co. v. Goeb,* 140 Md. 534, 537, 118 Atl. 74; *Weinstein v. Boyd,* 136 Md. 227, 234, 110 Atl. 506. See also, 2 Poe, *Pleading and Practice,* Section 288A (5th ed. 1925) and cases cited therein.

Assuming, *arguendo,* that the plaintiffs had not closed their case and the trial judge was without discretion as to whether to allow Hazel Fletcher to testify, there is nothing in the record before us to show that the plaintiffs were prejudiced by the trial judge's ruling. No formal proffer was made of what she would have testified to if she had been allowed to take the stand and the only hint we have as to what that testimony would have been is contained in Judge Harlan's written opinion in which he gave his reasons for over-ruling the motion for new trial. In that opinion the trial judge refers to the contents of an informal proffer which does not show that the appellants were prejudiced by the disallowance of prospective witness Fletcher's testimony. The only facts contained in the informal proffer, not developed theretofore in the trial, were that "the defendant *started up quickly* from a standing position some distance to the west and failed to reduce his speed, * * *." (Emphasis added.) That the defendant "started up quickly" and thereafter failed to reduce his speed, without more, does not constitute sufficient evidence of primary negligence, because these assertions amount to mere adjectival generalizations about an event from which no sufficient probative inference of negligence could be drawn. *Miller v. Robinson,* 241 Md. 335, 338, 216 A. 2d 743, 745, and cases therein cited; *Maryland Chemi-*

cal Company, Inc. v. Monn, 241 Md. 127, 215 A. 2d 731; Fowler v. Smith, 240 Md. 240, 246, 213 A. 2d 549; Jones v. Baltimore Transit Co., 211 Md. 423, 428-29, 127 A. 2d 649; Balto. Transit Co. v. Sun Cab Co., 210 Md. 555, 560, 124 A. 2d 567; Kaufman v. Baltimore Transit Co., 197 Md. 141, 146, 78 A. 2d 464.

Appellants' third contention, closely related to their second, is that they should have been allowed to call Hazel Fletcher as a rebuttal witness. Here again, no formal proffer was made, as required of counsel, as to what the excluded rebuttal testimony would have been but it seems apparent it would have been that referred to by Judge Harlan. In any event, as the term "rebuttal witness" suggests, the only questions which such a witness can properly answer are those which tend to impeach or negative the prior evidence or the testimony of a previous witness. The plaintiff could not properly have proved his case in chief, *i.e.*, existence of primary negligence by the testimony of this witness (unless the court had allowed her to testify as a witness in chief and her testimony was sufficient to do so). Here no legally sufficient evidence of primary negligence had been shown in the presentation of either the plaintiffs' or the defendant's case, and thus no useful purpose would have been served by allowing the witness to rebut preceding evidence or testimony. While normally the trial judge may not refuse the calling of a rebuttal witness, he has discretion to ascertain whether individual questions will truly tend to rebut, and in this case the trial judge could properly exclude this witness' entire rebuttal testimony because he would have been legally required to direct a verdict for the defendant at the conclusion of her testimony had she been allowed to testify.

Finding no reversible error, the judgment will be affirmed.

*Judgment affirmed, appellants to pay the costs.*