649 A.2d 1173

**James Allen KULBICKI**

**v.**

**STATE of Maryland.**

**No. 190, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 1, 1994.

Byron L. Warnken (Janis R. Harvey and Warnken & Warnken on the brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before MOYLAN, BISHOP and BLOOM, JJ.

BLOOM, Judge.

Appellant, James Allen Kulbicki, was convicted by a jury in the Circuit Court for Baltimore County of first degree murder and use of a handgun in the commission of a felony. Appellant was sentenced to life imprisonment without parole for the murder conviction and to a consecutive prison term of twenty years for the handgun conviction. In this appeal from those judgments, appellant presents the following issues for our determination:

I.  Whether the Maryland Constitution, which provides an absolute right to a change of venue for any offense "punishable by death," entitles a defendant to a change of venue when charged with first degree murder in a case in which the State elects not to seek the death penalty.

II.  Whether it is reversible error to admit evidence of guns and ammunition that the State's expert testified could not possibly be the murder weapon.

III.  Whether it is reversible error to deny a defendant the opportunity to present evidence negating criminal

agency by introducing evidence that someone else was the criminal agent.

IV. Whether it is reversible error to permit the State to offer, as rebuttal evidence, hearsay testimony of an alleged admission of a defendant, and then, having admitted the rebuttal evidence, to deny a defendant the opportunity to testify on surrebuttal.

V. Whether it is an abuse of discretion, in a murder case in which criminal agency is established solely based on circumstantial evidence, to deny a motion for a new trial based on a newly discovered witness, whose testimony strongly indicates that someone other than the defendant was the criminal agent, and would have created reasonable doubt.

Because we reverse the judgments of the circuit court on the fourth issue, we need not address the other issues.

### FACTS

James Allen Kulbicki, a Baltimore City police officer, had an extramarital affair with Gina Neuslein and was alleged to be the father of a child born to her in 1991. Kulbicki denied that he was the father of the child, and a paternity petition was filed on Ms. Neuslein's behalf by the Paternity and Nonsupport Division of the State's Attorney's Office for Baltimore City in an attempt to collect child support payments from him. In spite of this paternity suit, Kulbicki maintained contact with Ms. Neuslein, occasionally visiting her at her home.

On 9 January 1993, Ms. Neuslein left her home at 3:30 p.m. and began her half-mile walk to work. She never arrived at work. At 7:10 a.m. on 10 January 1993, her dead body was found next to the parking lot at the archery range at Gunpowder State Park. The cause of her death was a bullet wound to her head, which was inflicted between 3:30 p.m. and 8:00 p.m. on 9 January 1993.

On 11 January 1993, members of the Baltimore County Police Department arrested Kulbicki and, pursuant to a war-

rant, searched Kulbicki's home and vehicles. During their search of Kulbicki's home, the officers seized guns, ammunition, and a blue denim jacket that had a blood stain on one of the sleeves. The State's DNA expert and a forensic serologist both testified that the blood on the sleeve was that of the victim. In Kulbicki's pickup truck, the police found bone fragments and a bullet fragment that had the same elemental composition as a bullet fragment found in the victim's brain. They also found what appeared to be blood stains inside the truck.

During the defense's case-in-chief, appellant's step-son, Darryl Marciszewski, who lived with appellant, testified that he was angry with Ms. Neuslein because she had an affair with appellant while appellant was married to Marciszewski's mother. He further testified that he did not recall where he was on 9 January 1993 and that both he and appellant occasionally wore the blood-stained blue denim jacket that was seized from appellant's home.

On cross-examination, Marciszewski testified that he did not remember whether he was at home on 9 January 1993 or whether he was using appellant's pick-up truck at 3:30 p.m. on that day. Believing that appellant was attempting to use Marciszewski's testimony to create the impression that Marciszewski may have been responsible for the murder, the State then asked Marciszewski whether he killed Ms. Neuslein. The witness refused to answer and, despite the court's warning that he would be held in contempt of court if he did not answer, he again refused to answer when asked the question a second time. As a result, the judge excused the jury from the courtroom and again threatened to hold Marciszewski in contempt if he did not answer the question. When the jury returned, the State asked the question a third time; and Marciszewski replied that he did not kill Gina Neuslein.

In rebuttal to Marciszewski's testimony, the State presented the testimony of Melody Czajkowski and Deborah Dean, two of Marciszewski's co-workers at the Greenery Extended Care Nursing Home. Over appellant's objections, they testified, in

effect, that Marciszewski told them that he intended to confess, falsely, that he killed Gina Neuslein, thereby exonerating appellant. According to their testimony, Marciszewski then said that, when he was on trial for the murder, appellant would admit to killing her, thereby exonerating Marciszewski. Marciszewski believed that the Double Jeopardy Clause would then prohibit the State from prosecuting either appellant or him for the murder a second time. The following portions of the rebuttal witnesses' testimony were of particular significance:

(a) Melody Czajkowski

MS. SCHENNING: Did you have occasion to talk to Darryl Marciszewski last week about his father's trial?

MS. CZAJKOWSKI: Yes, Ma'am.

.     .     .     .     .

MS. SCHENNING: When the topic of the Kulbicki trial came up, what did Darryl say?

.     .     .     .     .

MS. CZAJKOWSKI: Darryl was telling me, he told me that he was going to get his father off by saying that he did it. And he told me that it would be double jeopardy when his father came to court, he would say that, you know, Darryl did it—

.     .     .     .     .

That Darryl did it and his father would get off and then his father would come out and say to the public that he did it, my son's not, he's not guilty.

.     .     .     .     .

You know, and he would be put, he would get out and then his father, you know, they couldn't try him again for the same crime; it would be double jeopardy.

.     .     .     .     .

MS. SCHENNING: Did Darryl tell you that he was going to come in and lie and say that he did it?

MS. CZAJKOWSKI: Yes.

### (b) Deborah Dean

MS. SCHENNING: Did you have occasion last week to speak to Darryl Marciszewski about the Kulbicki trial?

MS. DEAN: Yes.

MS. SCHENNING: What if anything did he tell you?

.    .    .    .    .

MS. DEAN: That he was going to try and get his Dad off, say that he did it so his Dad could get off and then he would say he did it and then it would be double jeopardy, so that neither one of them would go to jail.

.    .    .    .    .

MS. SCHENNING: I want you to explain who the he's are.

MS. DEAN: Don't say, he, just say, Darryl.

MS. SCHENNING: What did Darryl say he was going to do?

MS. DEAN: Darryl said he was going to come forward and say he did it.

MS. SCHENNING: Okay. And then you said, and then he was going to do something else. Who was that?

.    .    .    .    .

MS. DEAN: His Dad.

MS. SCHENNING: And what was his father going to do?

.    .    .    .    .

MS. DEAN: First Darryl was going to say he did it to get his Dad off. And then when his Dad got cleared of all the charges, his Dad would come forward to get Darryl out of jail and say he did it, so then it would be double jeopardy and he couldn't get tried for the same crime twice.

On cross-examination, Ms. Dean was asked whether Marciszewski stated that appellant was involved in the scheme, and she replied that Marciszewski used the term "we."

Recalled to the stand to testify in surrebuttal, Marciszewski gave a different version of his conversation with Ms. Czajkowski and Ms. Dean. Appellant then requested an opportunity

to testify in surrebuttal, and his counsel duly proffered that appellant intended to deny that he had ever discussed with his stepson the alleged scheme attributed to Marciszewski by the rebuttal witnesses. The court denied this request because the "conversation from the two [rebuttal] witnesses did not involve anything that [appellant] may or may not have said." Both parties then rested their cases.

Appellant was convicted of first degree murder and use of a handgun in the commission of a felony.

## DISCUSSION

With respect to the fourth issue raised by appellant, the State argues that the testimony of Ms. Czajkowski and Ms. Dean "was proper rebuttal because it directly impeached the testimony of Darryl [Marciszewski], which the defense had offered to suggest the possibility that someone other than Kulbicki had killed the victim." In response, appellant offers two alternative arguments. First, he asserts that the circuit court erred in allowing the State to present the testimony of Melody Czajkowski and Deborah Dean to rebut Marciszewski's testimony. According to appellant, their testimony was improper rebuttal evidence because it did not contradict any new matter introduced by appellant, and it contained hearsay. Second, appellant contends that, if the testimony of Ms. Czajkowski and Ms. Dean was proper rebuttal evidence, the court erred in refusing to allow appellant to testify in surrebuttal, thus denying him the opportunity to refute his complicity in Marciszewski's scheme to exonerate appellant. We agree with appellant's second contention.

■ To constitute rebuttal evidence, the testimony of Ms. Czajkowski and Ms. Dean must have "explain[ed], or [been] a direct reply to, or a contradiction of, any new matter that [was] brought into the case by the accused." *State v. Booze,* 334 Md. 64, 70, 637 A.2d 1214 (1994) (citing *Hepple v. State,* 31 Md.App. 525, 534, 358 A.2d 283 (1976), *aff'd,* 279 Md. 265, 368 A.2d 445 (1977)). If their testimony did not constitute rebuttal evidence, the circuit court had no discretion to admit it as

such. *State v. Hepple*, 279 Md. 265, 274, 368 A.2d 445 (1977); *see* Murphy, *Maryland Evidence Handbook*, § 305(B)(1) (1991 Cum.Supp.) (citing *Mays v. State*, 283 Md. 548, 554, 391 A.2d 429 (1978)).

On its face, the testimony of the rebuttal witnesses offered by the State does not appear to be rebuttal testimony. During cross-examination, Marciszewski testified that he did not kill Ms. Neuslein. On rebuttal, Ms. Czajkowski and Ms. Dean testified that Marciszewski told them that he was planning to give a false confession that he killed Ms. Neuslein. The testimony of the rebuttal witnesses did not explain, directly reply to or contradict Marciszewski's testimony; it actually tended to corroborate, rather than rebut, Marciszewski's testimony that he did not kill Ms. Neuslein. *See Booze*, 334 Md. at 70, 637 A.2d 1214; *Willey v. Glass*, 242 Md. 156, 164, 218 A.2d 212 (1966) (stating that rebuttal witnesses can only answer questions that tend to impeach or negate the prior evidence or the testimony of a previous witness).

During oral argument, however, the State elaborated on its contention that the rebuttal testimony was admitted properly. It argued that, although the testimony of Ms. Czajkowski and Ms. Dean did not rebut Marciszewski's spoken testimony, it did rebut the unspoken message that he was conveying. In other words, the State asserts that Marciszewski's testimony consisted not only of what he said but also the manner in which he said it. The State contends that the unspoken message conveyed by Marciszewski was that he, not the appellant, committed the murder, so the testimony of Ms. Dean and Ms. Czajkowski concerning Marciszewski's plan to exonerate appellant was proper rebuttal evidence.

In support of this argument, the State points out that Marciszewski testified during direct examination that he was angry at Ms. Neuslein for having an affair with appellant, that he could not remember where he was, or whether he was using appellant's truck, on the day that Ms. Neuslein was murdered, and that both he and appellant wore the blood-stained blue denim jacket. The State also relies on the fact

that Marciszewski, during cross-examination, twice refused to answer when the State asked him whether he killed Ms. Neuslein, and answered only after the trial judge threatened to hold him in contempt of court.

Our review of the record also reveals that, before Marciszewski testified, the trial judge told the parties that "[t]here's been an inference made in this trial that [Marciszewski] may have had something to do with the death of the victim and [the appellant] brought it up." The judge who presided over the trial was in a unique position from which to evaluate what the jury could infer from the testimony presented to it and the manner in which it was presented. The fact that he perceived, even before Marciszewski testified, that the jury may have inferred that Marciszewski was connected to the killing of Ms. Neuslein strongly supports the State's argument.

We recognize that, although a person's spoken words may technically convey one message, the implied message that is actually conveyed can contradict the spoken words. "As the English writer and critic John Ruskin observed, 'The essence of lying is in deception, not in words.'" *Cellano v. Farbo,* 59 Md.App. 606, 611, 477 A.2d 787 (1984) (quoting *Modern Painters,* Vol. V, pt. 9, ch. 7.). Although Marciszewski testified during cross-examination that he did not murder Ms. Neuslein, that message was equivocal at best. His prior direct testimony, coupled with the fact that he twice refused to answer when asked on cross-examination whether he murdered Ms. Neuslein, could have led, and was perceived by the court as designed to lead, the jury to infer that he was guilty of murdering her and, therefore, that appellant was innocent. Under these circumstances, we conclude that the testimony of Ms. Czajkowski and Ms. Dean did constitute rebuttal evidence because it directly contradicted that inference.

Appellant argues that, if the rebuttal evidence was admitted properly, then the circuit court erred in not permitting him to testify on surrebuttal that he "did not put his son up to saying anything." The State contends, and the circuit court ruled, that such testimony would not constitute surrebuttal because

the testimony of Ms. Czajkowski and Ms. Dean did not include any statements made by appellant. Therefore, the State argues, appellant's "proffered surrebuttal testimony would not have responded to anything in the [State's] rebuttal case. . . . [and] [i]ts exclusion was not error."

■ "Surrebuttal is essentially a rebuttal to a rebuttal." *Solko v. State Roads Comm'n*, 82 Md.App. 137, 149, 570 A.2d 373, *cert. denied*, 320 Md. 222, 577 A.2d 50 (1990). Accordingly, surrebuttal testimony should be permitted when it explains, directly replies to, or contradicts a new matter brought into the case on rebuttal. *Cf. Booze*, 334 Md. at 70, 637 A.2d 1214.

We have agreed with the State's argument that we must look beyond the words of Marciszewski's testimony and focus on the message that those words conveyed in determining whether the State's rebuttal testimony was admitted properly. The State now contends, however, that, in determining whether appellant should have been allowed to testify on surrebuttal, we should base our analysis solely on the words of their rebuttal witnesses' testimony. We shall not permit the State to prevail on two opposite positions in the same case. In determining whether the testimony of Ms. Czajkowski and Ms. Dean was proper rebuttal evidence, we accepted the State's argument that the jury could draw an inference from Marciszewski's testimony that was contrary to his words; in determining whether appellant should have been allowed to give surrebuttal testimony, we shall consider that the jury, by drawing inferences from the testimony of the rebuttal witnesses, may have received a message that went beyond their words.

■ Although neither rebuttal witness repeated any statements reportedly made to Marciszewski by appellant, they did testify that Marciszewski referred to his step-father when explaining the details of the plan to deliberately mislead the jury. Furthermore, it is unlikely that Marciszewski would falsely confess to murdering Ms. Neuslein unless he knew that appellant would exonerate him in return. As a result, the rebuttal testimony of Ms. Czajkowski and Ms. Dean created a

strong inference that appellant had conspired with Marciszew-ski to deceive the court in order to exculpate himself and that appellant was planning to confess to murdering Ms. Neuslein after he was acquitted and Marciszewski was put on trial. Because that inference was injected into the case as a result of the rebuttal testimony, we conclude that it constituted "new matter" that appellant should have been given an opportunity to explain to the jury on surrebuttal.

Appellant's case was premised on his assertion that he did not murder Ms. Neuslein. Allowing the State to present the incriminating rebuttal testimony of Ms. Czajkowski and Ms. Dean at the close of the trial, without giving appellant an opportunity to deny that he was involved in Marciszewski's fantastic scheme, was error. *Cf. Chaabi v. United States,* 544 A.2d 1247 (D.C.1988). Because we cannot "declare a belief beyond a reasonable doubt that the error in no way influenced the verdict," *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976), the error was not harmless. Reversal is mandated.

**JUDGMENTS REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW TRIAL.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**