816 A.2d 919

**Julius COLLINS**

**v.**

**STATE of Maryland.**

**No. 46, Sept. Term, 2002.**

Court of Appeals of Maryland.

Feb. 14, 2003.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Zoe Gillen White, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

After a four-day trial in the Circuit Court for Baltimore City, Julius Collins, Petitioner, was convicted by a jury of first degree murder and related handgun offenses. On 11 May 2001, the trial judge imposed a sentence of life imprisonment for the murder conviction and twenty years, to be served consecutively, for the handgun offenses. The convictions were affirmed by the Court of Special Appeals in an unreported opinion. Collins petitioned this Court for a writ of certiorari, which we granted. *Collins v. State*, 369 Md. 659, 802 A.2d 438 (2002).

## I.

On 13 April 2000, Dion Gibson was selling audiotapes on the street in an area known as the "Midway" in the 2900 block of Garrison Boulevard in Baltimore. He became embroiled in a dispute with a passenger in a Toyota Corolla, which resulted in his death from two gunshot wounds fired by the passenger. Baltimore City Police Officer Arnold Pittman, who was a block away at the time, heard an estimated five shots and drove to the scene. He observed the victim lying on the ground. People interviewed by the police at the scene denied seeing what occurred.

Approximately one month later, the police located the driver of the Toyota, Vivian Ann Dismel–Jordan. She gave the following account of the events of 13 April 2000. At approximately 8:00 p.m., accompanied by her five-year-old grandson, she was "hacking"[1] in Baltimore and picked up a fare, later identified as the Petitioner, and drove him to the area where the shooting occurred. She waited while Petitioner used a pay telephone, went into a store, and then argued with one member of a group outside the store as he was returning to her vehicle.

Petitioner entered the Toyota and told one of the group that he should tell the others "who I am." The rest of the group came over to the car, where one of them punched Petitioner in the face. According to Dismel–Jordan, Petitioner started shooting and she "peeled off." She did not see any other guns, and after returning Petitioner to his original location, she saw him give his gun to another person. During her interrogation by police, she identified Collins from a photographic array.

Another of the State's witnesses, Tavon Smith, also was present during the shooting. He testified that the victim and Petitioner argued, the victim became angry at Collins' comments, and that, as the victim approached the car, Collins shot him. When first questioned, however, Smith told the police that he could not identify anyone involved in the shooting.

Our decision in this case turns on the circumstances surrounding the State's third and final eyewitness, Thomas Preston. On the night of the shooting, Preston told Detective Lynette Nevins that he saw nothing because he was too far away. Detective Nevins included this information in her report. Eleven days after the crime, on 24 April 2000, Preston was shown a photographic array in which he positively identified Collins as the perpetrator. He also gave police a

---

1. "Hacking," we believe, describes unlicensed, unaffiliated taxi services.

contemporaneous audiotaped statement supporting the identification.

The State, in its "original discovery package," disclosed Preston's photo array identification, but neither the earlier non-identification statement nor the identification statement given at the time of the photo array was supplied. Later, the State provided to the defense, on the eve of an earlier trial date that ultimately was continued, the audiotape identification statement, but still did not disclose the initial non-identification statement given by Preston.

On the first day of trial, the State informed the court that a warrant had been issued the previous day for Preston, but service had not been effected yet.[2] At the beginning of the second day of trial, the State advised the court that a detective had visited the address Preston had supplied earlier. The address given was that of his grandmother. The State advised the court that Preston's grandmother refused to allow the police to enter her home.

The court issued a summons the same day for the grandmother to appear. The detectives who served the summons returned to court and reported that the grandmother had refused an offer of a ride to the courthouse. On the morning of the third day, she appeared and testified that she had not seen Preston for a week and that he had told her he was "going to his woman's house," but she did not know the woman or where she lived.

Later that day, the State concluded its case, reserving the right to introduce certain bullet fragments if they could be located in the evidence control unit. The defense did not object, and, once found, the fragments were introduced. The defense then presented three alibi witnesses. Thereafter, the State produced two rebuttal witnesses, concluding the evidentiary phase of the trial. Court was adjourned for the day.

---

2. Preston had been subpoenaed to appear on a prior trial date, but did not appear. Rather than subpoena him again, the State elected to issue a material witness warrant in an attempt to secure Preston's attendance at the new trial date.

On the fourth and final day of trial, the State requested that it be allowed to reopen its case to allow Preston to testify. He had been located by the police late on the previous day and released after being summoned to appear the next morning. He appeared as ordered.

Defense counsel opposed the motion to reopen, claiming that reopening at that point in the proceeding would be an abuse of the court's discretion because the "necessity" for reopening was due to the State's deficient trial preparation in failing to summons the witness prior to trial. Defense counsel, now made aware of Preston's statement made on the night of the crime, also noted that the statement had not been disclosed previously to the defense. The prosecutor proffered that non-disclosure was inadvertent. He represented to the Court and the defense that he had overlooked the document in his file because it had slipped inside of a stapled document. The court ruled on the motion as follows:

> Okay, I will direct [the State] to turn the information report [regarding the prior inconsistent statement] over to you [defense counsel]. I will direct you not to disclose the contents of the information sheet to the defendant or to any non-lawyer who is affiliated with you. I will permit the State to reopen its case to call Mr. Preston. I will have the direct examination done. I will call a recess at the conclusion of the direct examination. At that point you can inform me whether you feel you need sufficient time to prepare for cross-examination of the witness. If you want to voir dire him out of the presence of the jury before you cross-examine him in front of the jury, I will permit that.

Petitioner then made a motion to suppress the photo identification made by Preston. Preston testified as a part of the hearing held on the suppression motion, and defense counsel also was permitted to voir dire Preston regarding what he told police in his earlier statement. At the conclusion of the suppression hearing, the court, after denying the suppression motion, reiterated its ruling that the State would be permitted to reopen its case:

I do believe that it would be appropriate to permit the State to reopen its case to present this witness'[s] testimony in light of the difficulties that we have seen this week of the State having in getting this witness and finally getting him here. I am convinced that the State has acted diligently in an effort to produce the witness and that diligence did, in fact, result in his availability this morning. Accordingly, I will permit them to reopen.

After addressing several other motions, the following exchange took place between the Court and counsel:

[Defense Counsel]: Your Honor, I am going to want to talk to this witness, find out who the detective is, and I'd rather do that—rather then put him on and then start again—

[The Court]: Well. I'm going to permit the State to put him on now and I will permit you to take some cross now and do a further—but [the State] I think is correct in one sense that your entitlement to the statement that he gave would have vested, for want of a better word, at the point after which he had testified. Since you've had his statement prior to his testimony, you are in no worse position than had he been put on the stand earlier during the trial ... You would have been entitled only to have the statement of his after he had testified. So basically there is not reason even to permit you the additional time for cross examination of this witness.

[Defense Counsel]: Judge, I'm not sure if that's absolutely correct because they gave me a statement saying—incriminating my client but the truth of the matter is the State always had exculpatory evidence in the fact that it—

[The Court]: Well, now we've had discussions of exculpatory, [counselor].

[Defense Counsel]: Well I mean—

[The Court]: And we've made it clear that this is not exculpatory in the traditional *Brady*[3] sense of it tends to establish his innocence. It is exculpatory in the extended

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

sense in that it tends to provide impeachment of the witness. So let's perhaps refer to it as impeachment rather than exculpatory because I think it is properly impeaching of Mr. Preston, not necessarily exculpatory of your client.

[Defense Counsel]: Your Honor, this is the normal witness statement because they did have impeaching testimony. They didn't give me the names of the officers or the witnesses so I could investigate.

[The Court] I'm not so sure you would have been entitled to that before the witness testified.

[Defense Counsel]: Who he gave the other statement to?

[The Court]: Not before he testified, no.

[Defense Counsel]: I object, Your Honor.

[The Court]: Under *Jencks*[4] as adopted into this state by *Carr*,[5] basically the procedure here is the same as in the federal courts which is there is an entitlement to the statement after the witness has testified. It is deemed sufficient merely that there be some form of continuance, even perhaps only a brief one, to permit you to review the statement and then cross-examine the witness. You have, in fact, had an opportunity to review the statement. You've had, in fact, more than you're entitled to because you've had an opportunity to voir dire the witness on that statement. There is no prejudice to you.

[Defense Counsel]: All I really want is to have the officer or officers that were present in court for my—

[The Court]: That's more than you would be entitled to under any circumstances.

[Prosecution]: Could I be heard on that, Your Honor?

[The Court]: Yes.

---

**4.** *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

**5.** *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979). See also *Leonard v. State,* 46 Md.App. 631, 421 A.2d 85 (1980), *aff'd, State v. Leonard,* 290 Md. 295, 429 A.2d 538 (1981).

[Prosecution]: I would object to him having the weekend for this reason.

[The Court]: Your objection is sustained. Go ahead and complete your record, but I've had some independent thoughts myself which I will add after you do, but go ahead and complete your—

[Prosecution]: Thank you, Your Honor.

[The Court]:—basis for the objection.

[Prosecution]: Thank you, Your Honor. I can tell counsel and the Court that it was Detective Nevins who took that statement the night of the homicide. I use the word statement loosely because it wasn't recorded or signed. However, she took notes which counsel now has and I do apologize for the lateness of him receiving them. He should have—I would have given them to him at least at the same time I gave him the other statement if I had been aware that it was, in fact, in my file.

However, the witness as testified under oath [during the suppression hearing] and admitted that, in fact, he told—it's his expression, I told them nothing and then he admitted that—

[The Court]: Well, he testified he lied, basically.

[Prosecution]: Yea, and he also testified I told them I was a block away and I didn't see it.

[The Court]: Right, that's the extent of the impeachment he'd be entitled to.

[Prosecution]: Yea, he's adopted the impeaching statement.

[The Court]: Uh-huh, you're right. He's entitled to no more, no continuance. I will give him—

[Defense Counsel]: Judge, I'm not allowed to have that witness brought up here from the Homicide Unit, the lady detective whoever it is?

[The Court]: That's correct, you're not.

[Defense Counsel] Your are prohibiting that, Your Honor?

[The Court]: I am prohibiting that and I will give you some—if you want I will give you some brief period of time

after the direct to cross but we will get this to the jury today. Anything else, counsel?

[Defense Counsel]: I just have a continuing objection.

[The Court]: You have your objection.

Subsequent to this exchange, Preston testified in open court and was cross-examined by defense counsel. Preston identified Collins as the shooter. He stated that the shooting was preceded by an argument over the victim's attempt to sell Collins an audiotape. Counsel for the defense then repeated his request that he be allowed to reopen the defense and have Detective Nevins, the officer who took Preston's statement the night of the shooting and who was present in court, testify. The court granted this request.

## II.

Petitioner poses three questions for our consideration:

1) Does lack of diligence on the part of the State in effectuating service of a summons on a witness amount to "good cause" for the reopening of the State's case on the day following the conclusion of the State's rebuttal evidence?

2) Was it an abuse of discretion to allow the State to reopen its case, for the second time, to present damaging eyewitness testimony where the State's witness had not been served, the State had failed to begin looking for the witness until after trial had commenced, the State had failed to disclose the witness's exculpatory pretrial statement, and the court denied the defense a reasonable weekend continuance to investigate and respond to this evidence?

3) Did the trial court err in denying a motion for mistrial where a detective, in testifying about a photographic array, made a gratuitous reference to the presence of Mr. Collins's photograph in a database that tracks all people arrested in Baltimore City?

Because we find no merit in Petitioner's first question, but some in his second question, it is unnecessary for this court to reach the third question presented by the Petitioner.

## III.

 Petitioner first argues that the trial court abused its discretion in allowing the prosecution to reopen its case, asserting primarily that the prosecution's failure to know the whereabouts of its witness made it impossible for the prosecution to show that it had "good cause" for making the request. Petitioner relies on language in *State v. Booze*, 334 Md. 64, 637 A.2d 1214 (1994), where we stated:

> [T]he normal rule "is that the plaintiff will be required to go fully into his own case-in-chief on [those] issues as to which he holds the substantial affirmative, and where, therefore, the burden of proof rests on him; and hence, in reply to the case made by the defendant, he will ordinarily be limited to what is strictly rebutting evidence," but that there are exceptions necessitated by the requirements of particular cases. Those exceptions should truly be extraordinary; the trial court should be reluctant to grant reopenings. This is so because "of the desirability of maintaining an orderly trial" and "the very strong probability" that the trier of fact will give undue emphasis or prominence to evidence offered on reopening at the rebuttal stage of trial.

*Id.* at 70–71, 637 A.2d at 1217 (internal citations omitted). According to Petitioner, the fact that the prosecution failed to be certain of the whereabouts of Preston, and did not attempt to secure his presence until the day before the trial began, constituted a lack of diligence. The failure to locate Preston until after the prosecution rested, therefore, was not an "extraordinary circumstance" constituting "good cause."

We set forth the standard in *Wright v. State*, 349 Md. 334, 708 A.2d 316 (1998), for what a trial judge should consider in exercising his or her discretion to allow evidence out of order. In explaining the standard and its exceptions, we stated:

> The general rule, of long standing in Maryland, is that "the plaintiff [which in a criminal case is the State] must put in the whole of his evidence upon every point or issue which he opens, before the defendant proceeds with the evidence on his part." It may not "go into half of its case and reserve

the remainder, but is obliged to develop the whole." More recently, we noted, with particular reference to criminal cases, that "ordinarily, an orderly conducted criminal trial anticipates the State adducing all of its evidence in chief and resting its case. The defense follows by producing its evidence tending to establish the accused's non-culpability. . . ." A contrary practice, this Court has observed, "would not only greatly prolong trials, but would frequently lead to surprise and injustice."

There are two caveats to the general rule, both described in some detail in *State v. Hepple,* 279 Md. 265, 368 A.2d 445 (1977). The first arises from the discretion that a trial court has to permit a party to reopen its case-in-chief, even after the opposing party has concluded. In *State v. Booze,* supra, 334 Md. 64, 637 A.2d 1214, we synthesized holdings and pronouncements from earlier cases, including *State v. Hepple* and *Dyson v. State,* 328 Md. 490, 615 A.2d 1182 (1992), and, quoting from some of those Opinions, confirmed (1) that the trial court has discretion "to permit the moving party to reopen its case to introduce evidence adducible in chief," but (2) that, in exercising that discretion, the judge must consider a number of factors, including "whether the State deliberately withheld the evidence proffered in order to have it presented at such time as to obtain an unfair advantage by its impact on the trier of facts," and "whether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature; and whether the reopening is at the request of the jury or a party." The judge must consider "whether the proposed evidence is merely cumulative to, or corroborative of, that already offered in chief or whether it is important or essential to a conviction." The discretion, in other words, though broad, is not unbounded; it cannot be used to permit the plaintiff/State unfairly to prejudice the defendant. We made clear in both *Hepple,* 279 Md. at 270, 368 A.2d at 449, and *Booze,* 334 Md. at 69, 637 A.2d at 1216, that the court's

allowance of such a reopening will not constitute an abuse of discretion "so long as [it] does not impair the ability of the defendant to answer and otherwise receive a fair trial."

The second caveat deals with rebuttal evidence. In *Mayson v. State, supra*, 238 Md.[283], 289, 208 A.2d [599], 602 [1965], and *State v. Hepple, supra*, 279 Md. at 270, 368 A.2d at 449, we defined rebuttal evidence as any competent evidence which explains, or is a direct reply to, or a contradiction of "any new matter *that has been brought into the case by the defense.*" (Emphasis added.) *See also Lane v. State*, 226 Md. 81, 90, 172 A.2d 400, 404 (1961), where we defined it as competent evidence which explains, or is a direct reply to, or a contradiction of, "material evidence *introduced by the accused ....*" (Emphasis added.) The articulation that we used in *Lane* was repeated in *Booze, supra*, 334 Md. at 70, 637 A.2d at 1217.

*Id.* at 341–43, 708 A.2d at 319–20 (some internal citations omitted).

The case *sub judice* involves "the discretion that a trial court has to permit a party to reopen its case-in-chief, even after the opposing party has concluded." Applying the considerations outlined in *Wright,* we find no abuse of discretion on this record on the part of the trial court in allowing the prosecution to reopen its case. There was no evidence of the State withholding the witness for tactical advantage. On the contrary, the record shows that there was an ongoing effort to procure his attendance. The State is not required to keep track of where all of its witnesses are 24/7. The State's reliance upon the information it had regarding Preston's whereabouts was reasonable, as were its steps in securing his appearance. Because of the difficulties in locating Preston, the State had good cause to request that it be allowed to reopen its case.

Preston was an eye-witness to murder. There can be little argument that his testimony was not merely cumulative, or merely corroborative, of evidence already offered in the State's case-in-chief. The testimony of an eye-witness quali-

fies as evidence "which is important or essential to a conviction." [6] Given Preston's testimony admitting his prior inconsistent statement, it is unlikely that the jury would give it undue emphasis in this case.

Nor did the reopening of the prosecution's case, standing alone, impair the ability of Collins to respond and otherwise receive a fair trial. Preston was not a "surprise" witness. He was subpoenaed by the State for the earlier trial date, and Collins knew or should have known that Preston might testify. Defense counsel was permitted to review the information sheet containing the witness's prior inconsistent statement, granted a chance to voir dire the witness out of the presence of the jury, able to cross-examine Preston following his trial testimony, and was allowed to re-open the defense to offer additional evidence in response to Preston's testimony. Under these circumstances, we find no abuse of discretion on the part of the trial court in allowing the State to reopen its case.

### IV.

██ We reach a different conclusion, however, when we review the trial court's ruling with regard to the production of the prior inconsistent statement made by Preston to police on the night of the murder, which statement the prosecution neglected to disclose to the defense prior to the fourth day of trial. Upon the discovery that the prosecution had failed to produce the statement of an identifying witness, a continuance over the weekend, as requested, would have been appropriate to allow defense counsel adequate time to "regroup," investigate, and prepare as full a defense as possible.

The trial court correctly pointed out that this was not a circumstance where the defendant's due process rights had

---

**6.** *See Mayson v. State.* 238 Md. 283, 289, 208 A.2d 599, 603 (1965)("This does not mean that the court should not be alert in preventing the State from deliberately withholding a part of its testimony (such as that which is merely cumulative to, or corroborative of, that already offered in chief) in order to have testimony favorable to its case repeated at the end of the trial for the effect that it may have upon the trier of facts.")

been violated by the failure to produce the prior inconsistent statement. *Brady v. Maryland,* 373 U.S. 83, 86–87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), sets forth the minimum due process requirements for disclosure of exculpatory evidence to ensure that a defendant receives a fair trial. *See also Conyers v. State,* 367 Md. 571, 790 A.2d 15 (2002); *Ware v. State,* 348 Md. 19, 702 A.2d 699 (1997). Because the prior statement of the witness was disclosed prior to the conclusion of the trial, the case *sub judice* does not involve a *Brady* violation, though it does involve the discovery of what has come to be known as "*Brady* materials," under Maryland Rule 4–263(a). *See Jones v. State,* 132 Md.App. 657, 674–75, 753 A.2d 587, 596–97 (2000) (distinguishing discovery violations under Rule 4–263 from *Brady* violations, the latter occurring when the State suppresses exculpatory evidence throughout the entire course of a trial).

 The trial court in the present case ruled that a continuance was not necessary, reasoning, as repeated *supra,* that defense counsel had received the witness's statement prior to the witness's testimony and even had been allowed to voir dire the witness about the statement out of the jury's presence, all of which, applying the rules of *Jencks–Carr–Leonard,*[7] the trial court felt was more than Collins was entitled to. Were the issue here only of the *Jencks–Carr–Leonard* type, the trial court would have been correct. The defense would not be entitled to receive a statement of a witness until after that witness had testified. *Leonard v. State,* 46 Md.App. 631, 637–640, 421 A.2d 85 (1980), *aff'd, State v. Leonard,* 290 Md. 295, 429 A.2d 538 (1981)(adopting the reasoning found in the opinion of the Court of Special Appeals). As we pointed out in *Bruce v. State,* 318 Md. 706, 725, 569 A.2d 1254,1264 (1990), "the essential purpose for requiring disclosure of statements is

---

7. *See Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979); *Leonard v. State,* 46 Md.App. 631, 421 A.2d 85(1980) *aff'd, State v. Leonard,* 290 Md. 295, 429 A.2d 538 (1981). *See also* the Jencks Act, 18 U.S.C. § 3500 (1985).

to permit the defense an opportunity to impeach the witness through these prior statements." We also pointed out in *Bruce,* however, that "if the State is aware of prior inconsistent statements made by a witness to a police officer, it may have an obligation to produce this information under the duty to furnish exculpatory evidence" under Rule 4–263(a)(1). *Id.* The trial court *sub judice* erred because it failed to identify fully and correctly the problem with the failure to produce this particular witness's prior statement. The problem requiring curative action by the trial court occurred long before the instance of Preston taking the stand and testifying.

Maryland Rule 4–263(a) requires that certain materials be disclosed to the defense without the necessity of a request.[8] It states:

(a) **Disclosure without request:** Without the necessity of a request, the State's Attorney shall furnish to the defendant:

(1) Any material or information tending to negate or mitigate the guilt of punishment of the defendant as to the offense charged;

(2) Any relevant material or information regarding: (A) specific searches and seizures, wire taps or eavesdropping, (B) the acquisition of statements made by the defendant to a State agent that the State intends to use at a hearing or

---

**8.** There are at least three limitations on the State's obligation under Rule 4–263(a)(2).

"First, Md. R. [4–263(a)(2)] is concerned only with the subjects specified in parts [(A), (B), and (C)]. Second, Md. R. [4–263(g)] limits that which is discoverable under Md. R. [4–263(a)(2)] to 'material and information in the possession or control of [the State's Attorney, of] members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.' Third, the information must be relevant. This is the same limitation which courts traditionally apply and which turns on the legal issues under the facts and circumstances of the case."

*Baynor v. State,* 355 Md. 726, 736, 736 A.2d 325, 331 (1999)(citing *Warrick v. State,* 302 Md. 162, 170–71, 486 A.2d 189, 193 (1985)).

trial, and (C) pretrial identification of the defendant by a witness for the State.

We need not determine whether the State violated Rule 4–263(a)(1), as suggested by the language of *Bruce,* because the State clearly violated Rule 4–263(a)(2)(C), as Preston's prior inconsistent statement, under the circumstances of this case, falls within the scope of *"relevant* material or information *regarding* pretrial identification of the defendant by a witness for the State." (Emphasis added).[9]

This Court recently interpreted Rule 4–263 in *Williams v. State,* 364 Md. 160, 771 A.2d 1082 (2001). The issue there was whether a police officer's surveillance of the defendant was subject to mandatory disclosure under (a)(2)(C). We observed that we look first to the plain meaning of the rule, and to the case law interpreting the rule, in determining whether a discovery violation exists. *Id.* at 171, 771 A.2d at 1088. In describing the underlying policies of the rule, we stated:

> Inherent benefits of discovery include providing adequate information to both parties to facilitate informed pleas, ensuring thorough and effective cross-examination, and expediting the trial process by diminishing the need for continuances to deal with unfamiliar information presented at trial. Specific to the mandatory disclosure provisions of Rule 4–263(a), the major objectives are to assist defendants in preparing their defense and to protect them from unfair surprise. The duty to disclose pre-trial identifications, then,

---

9. Preston's statement of 13 April 2000 that he "saw nothing," standing alone, would not fall ordinarily under the mandatory disclosure requirements of Rule 4–263(a) unless the circumstances were such that it would be exculpatory in nature and thus required to be produced under 4–263(a)(1). Once Preston later indicated to the State that he could (and would) identify Petitioner as the perpetrator, however, the State was required by 4–263(a)(2)(C) to produce not only statements containing the identification, but also any and all other statements made by Preston regarding who he saw or did not see commit the act. It is the subsequent identification which makes the initial statement given on the night of the crime relevant to the veracity of the subsequent identification, and it is upon that occurrence that the prior statement, now a prior inconsistent statement, became subject to the requirements of 4–263(a)(2)(C).

is properly determined by interpreting the plain meaning of the Rule with proper deference to these policies.

*Id.* at 172, 771 A.2d at 1089.

In light of the plain meaning and policies of the Rule, the circumstances presented in the present case clearly violated 4–263(a)(2)(C).

In the case at hand, the trial judge made no specific finding that the State violated the discovery rule, and therefore he exercised no discretion in fashioning a remedy for the discovery violation. Having determined that the trial judge erred because the State violated Rule 4–263(a)(2)(C) by failing to disclose accurately the inconsistent pretrial statement of the identifying witness, we must consider on this record whether that error was harmless. *Hutchins v. State,* 339 Md. 466, 475, 663 A.2d 1281,1286 (1995).

As we pointed out in *Johnson v. State,* 360 Md. 250, 269–70, 757 A.2d 796, 806–807 (2000) (some internal citations omitted):

> Without providing Petitioner with the recorded statement, the dual purposes of Rule 4–263 could not be fulfilled here. As Petitioner's trial counsel explained to the trial court, without the recorded statement, Petitioner was unable to prepare for his defense, i.e., to effectively cross-examine or impeach the State's witness or to protect himself from surprise. We noted in *Carr v. State,* 284 Md. 455, 460–61, 397 A.2d 606, 608–09 (1979):
>
> > Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness'[s] testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness'[s] trial testimony.

(citing *Jencks v. United States,* 353 U.S. 657, 667, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103, 1111 (1957)). Although the issues and facts in *Carr* are different from this case, we think the observations in *Carr* as to the value of an available recorded statement to a defense counsel are worth noting here. The determination of what material contained on the recording is useful to the defense is best left to defense counsel and his or her client.

Upon an independent review of the record, we must be able to declare, beyond a reasonable doubt, that the error in no way influenced the verdict; otherwise, reversal is required. See *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976)(stating further that "such reviewing court must . . . be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded-may have contributed to the rendition of the guilty verdict"). We find that the State's failure to provide the defendant with Preston's prior conflicting statement concerning his ability to identify Collins was prejudicial and cannot be construed as harmless error. Whether a witness can identify positively the accused at the scene of the crime is often the cardinal facet of a determination of guilt. *See Williams,* 364 Md. at 178–81, 771 A.2d at 1093–94. It is not for us to determine what, if any, response the defense could have prepared had it known of the prior inconsistent statement. It is enough to find that the defense was denied an adequate opportunity to do so, to its prejudice. Rule 4–263(i) provides:

> **Protective Orders.** On motion and for good cause shown, the court may order that specified disclosures be restricted. If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances.

On the facts of this case, granting defendant's motion for a continuance over the weekend in order to have an opportunity to review the circumstances surrounding the undisclosed prior inconsistent statement would have been reasonable. We find that the trial court abused its discretion by denying that motion. As a result, the defendant was prejudiced, the judgment must be reversed, and the case remanded for a new trial

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**