860 A.2d 416

Richard Wayne SIMONS

v.

STATE of Maryland.

No. 853 Sept. Term 2003.

Court of Special Appeals of Maryland.

Oct. 29, 2004.

Toby J. Heytens (Nancy S. Forster, Public Defender on the brief), Baltimore, for appellant.

Diane E. Keller (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before DAVIS, EYLER, JAMES R., RODOWSKY, LAWRENCE F. (retired, specially assigned), JJ.

DAVIS, Judge.

On April 2, 2002, appellant was charged in the Harford County Circuit Court with first degree burglary, two counts of felony theft, malicious destruction of property valued at $500 or more, malicious destruction of property valued at less than $500, and unlawful taking of a motor vehicle. The State subsequently withdrew the charge of malicious destruction of property valued at less than $500 and trial commenced on March 11, 2003. During trial, appellant argued a motion *in limine* to disallow a witness's testimony regarding her pre-trial identification of appellant and subsequent identification of appellant at trial because the State violated Maryland Rule 4–263(a)(2)(C). The circuit court denied the motion and, when the witness testified, appellant objected again to her identification. After a three day trial, the jury found appellant guilty of all charges. The trial judge subsequently sentenced appellant

on June 2, 2003, to thirty years' imprisonment, with all but five years suspended.

Appellant filed a timely appeal on June 3, 2003, and presents one question for our review, which we rephrase as follows:

Did the State violate Maryland Rule 4–263(a)(2)(C) and, consequently, did the trial judge err in allowing the State's witness to testify regarding her pre-trial identification?

We answer in the affirmative. Accordingly, we shall reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

On January 30, 2002, a break-in occurred at Michael Kindsvatter's apartment in Edgewood, Maryland between 6:00 p.m. and 10:30 p.m. Kindsvatter returned home between 10:30 p.m. and 11:00 p.m. and found his door unlocked, lights on, the apartment a "total mess," the back window "busted out," and "a lot of stuff missing," including a spare set of keys. He called the police to report the break-in. The following day, he noticed his car was missing and again called the police. The police recovered the car, which was heavily damaged, and concluded that the car had been stolen by someone who "had keys to it." There were no witnesses to the actual break-in and there was no physical evidence linking appellant to the crime.

As noted, *supra*, on April 2, 2002, appellant was indicted in the Harford County Circuit Court for first degree burglary, two counts of felony theft, malicious destruction of property valued at $500 or more, malicious destruction of property valued at less than $500, and unlawful taking of a motor vehicle.

At trial, Kindsvatter testified that appellant and his friend "Roger," who were both acquaintances of his, visited his apartment on the day of the break-in. The State's second witness, Deputy Lisa Gryzbowski, testified that she encoun-

tered a man named Roger Hutler on February 17, 2000, and seized two Blockbuster Video membership cards with Kindsvatter's name on them and a portable CD player that also belonged to Kindsvatter.

The State's third witness was Kindsvatter's friend, Tracy Hanna, who lived across the street from him. She testified that she knew appellant and "Roger" because appellant's girlfriend was her neighbor. At approximately 10:00 p.m. on the night of the break-in, Hanna witnessed appellant and "Roger" "walking back and forth" in front of Kindsvatter's apartment. Three or four days later, she noticed appellant wearing Kindsvatter's clothes and diamond earring. There were inconsistencies in her testimony and she admitted that she had a bad memory. Numerous objections were lodged by counsel regarding Hanna's pre-trial identification of appellant.

Appellant's counsel contended that, although he had spoken with Hanna prior to trial, he did not know that she had identified appellant to the police prior to trial. During the State's opening statement, appellant first broached the issue with the court and stated that "there's been no discovery given to me of any identification in this case." The State argued that it was "not an identification. Somebody that knew them saw them out front. It's not an ID issue." The circuit court deferred consideration of the issue until the following day.

On the second day of trial, before the State called Hanna to testify, appellant's counsel again raised the issue of her pre-trial identification of appellant to police. Pursuant to his motion *in limine*, counsel argued that Hanna's in-court identification of appellant should be disallowed. The State, he averred, violated discovery rules because he was not informed of the pre-trial identification until trial. The State responded that Hanna was simply going to testify that she saw the appellant outside Kindsvatter's apartment on the day of the break-in and that such testimony did not present a pre-trial identification issue.

The trial judge denied appellant's motion *in limine* and the State first established how Hanna knew the appellant. She

was thereafter permitted to identify appellant by pointing to him. The following colloquy then ensued:

[State's Attorney]: Okay. Do you recall the date that Michael's house was broken into?

[Witness]: The date?

[State's Attorney]: Do you remember when it happened?

[Witness]: Yes. I remember when it happened.

[State's Attorney]: Okay. And the day that that happened, do you recall seeing anybody in or around his apartment?

[Witness]: Yes sir.

[State's Attorney]: And who was that?

[Witness]: [Appellant] and Roger.

[Appellant's Attorney]: Objection.

The Court: Do you wish to approach?

[Appellant's Attorney]: Well, motion—

The Court: Okay.

[Appellant's Attorney]: in limine.

The Court: Overruled.

Brenda Mazer, a paralegal in the State's Attorney's Office, next testified that, while she was working at the Public Defender's Office, she interviewed Hanna regarding the incident. Although Hanna initially denied speaking with Mazer, her memory was refreshed by Mazer's notes of the meeting. Her notes and testimony revealed that Hanna told her that she knew nothing about the break-in and did not see appellant on the night in question. According to Hanna, Mazer's account was not consistent with what she had stated.

Thea Swift was the final witness for the State. She was appellant's friend and, occasionally, the babysitter for his girlfriend's child. On one such occasion, Swift claimed that appellant came to pick up his child and admitted to Swift that he committed the crimes with which he was charged. Swift acknowledged she had initially lied to appellant's investigator because appellant told her not to testify. Her testimony at trial was truthful, she insisted, because she has moved since her conversation with appellant and now has "no fear" of him.

She also asserted that her statements to police were consistent with her trial testimony.

## LEGAL ANALYSIS

■ Appellant contends that the State violated Maryland Rule 4–263(a)(2)(C) by failing to inform him before trial of Hanna's pre-trial identification. The admission of her testimony and in-court identification, he says, cannot be deemed to be harmless error. Before reaching the merits of appellant's appeal, we first address the State's preservation argument.

Maryland Rule 4–323(a) states that "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent." In *Klauenberg v. State*, 355 Md. 528, 539, 735 A.2d 1061 (1999), the Court of Appeals stated:

> When a motion *in limine* to exclude evidence is denied, the issue of the admissibility of the evidence that was the subject of the motion is not preserved for appellate review unless a contemporaneous objection is made at the time the evidence is later introduced at trial.

*See Reed v. State*, 353 Md. 628, 638, 728 A.2d 195 (1999); *Prout v. State*, 311 Md. 348, 356, 535 A.2d 445 (1988); *Hickman v. State*, 76 Md.App. 111, 117, 543 A.2d 870 (1988). In the case *sub judice*, the record reveals that appellant's counsel preserved the issue for appeal. Counsel first attempted to address the issue during the State's opening statement, and the next day he argued his motion *in limine* to the court before Hanna testified. When Hanna testified that she had seen appellant and "Roger" walking back and forth in front of Kindsvatter's apartment around the time of the break-in, counsel immediately objected and the court denied his objection. His challenge to the identification is therefore preserved. We therefore turn to the merits of appellant's argument.

The mandatory disclosure requirements are set forth in Part (a) of Maryland Rule 4–263:

Without the necessity of a request, the State's Attorney shall furnish to the defendant: .

(1) Any material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged;

(2) *Any relevant material or information regarding:* (A) specific searches and seizures, wire taps or eavesdropping, (B) the acquisition of statements made by the defendant to a State agent that the State intends to use at a hearing or trial, and *(C) pretrial identification of the defendant by a witness for the State.*

(Emphasis added.)

■ As the Court of Appeals pointed out in *Williams v. State,* 364 Md. 160, 170–171, 771 A.2d 1082 (2001), the defendant is not required to show that the request was reasonable or that the item sought was material to the defense under the mandatory provision of Part (a) of the Rule or under Part (b), which requires the defendant to make a request for (1) the names and addresses of certain witnesses (2) statements of the defendant and (3) co-defendant and (4) reports and statements of experts.

Maryland Rule 4–263(a)(2)(C) mandates that "the State's Attorney shall furnish to the defendant ... relevant material or information regarding pretrial identification of the defendant by a witness for the State." According to the State, appellant was provided with a list of witnesses that included Hanna. Her testimony that she saw appellant on the night in question outside Kindsvatter's home, the State argues, did not amount to a pre-trial identification that implicated the Rule. Hanna's testimony "was not offered for purposes of identification, but to establish the whereabouts and conduct of someone she already knew." Appellant countered:

But [appellant's] argument is not that the State was required to give him advance notice of Hanna's trial testimony. Rather, his contention is that he was entitled to know about Hanna's pre-trial statement to the police and that the proper remedy for the State's failure to give him the

required notice would have been to bar Hanna from making an in-court identification.

The record does not reveal what Hanna told the police about appellant when she identified him. With respect to the failure of the State to advise counsel of a pre-trial identification, *Williams v. State, supra,* is instructive. Our task is first to determine if Hanna's depiction of appellant's actions on the evening in question constituted a pre-trial identification. *Id.* at 165, 771 A.2d 1082. In *Williams,* the defendant was charged with distribution of cocaine. *Id.* at 165, 771 A.2d 1082. "The State's case relied heavily on the testimony of [an accomplice]" and Trooper Wilson. *Id.* The accomplice, as part of a plea arrangement, stated that the defendant entered the apartment prior to the police raid and engaged in a drug transaction. *Id.* Trooper Wilson "was the only other State's witness to place [defendant] at the apartment on the night of the raid." *Id.* at 166, 771 A.2d 1082. Although it was unclear if the State purposefully or accidentally misled the defendant, the State informed the defendant through discovery that it did not have any pre-trial identification evidence at that time. *Id.*

On numerous occasions prior to trial, the State told the court and defense counsel that the police officer could only offer a general description of the man he observed at the raid. *Id.* at 166–67, 771 A.2d 1082. Counsel filed a motion to suppress the identification and the court, based on the State's claim that the officer could only identify appellant's "size, height, and stature," denied the motion prior to trial and found that no pre-trial identification existed. *Id.* Although the State had repeatedly proffered that the police officer could not give more than a general description of the appellant at trial, Trooper Wilson "distinctly stated, 'it was Mr. Williams who is seated at the defense table.'" *Id.* at 167–68, 771 A.2d 1082. Counsel objected to the identification and moved for a new trial arguing, *inter alia,* that Rule 4–263 was violated because the State failed to disclose the Trooper's pre-trial identification. *Id.* at 168, 771 A.2d 1082.

The Court denied counsel's request for a new trial and found that, even though the officer's testimony was a surprise out-of-court identification, it was a surprise to the State also, and the State could not inform defense counsel of something it did not know.

The Court of Appeals in *Williams,* in framing the issue before it, articulated the rationale undergirding the mandatory provisions of the Rule:

> The issue before us today—whether police surveillance observations are subject to the mandatory disclosure requirements of Rule 4–263(a)(2)(C)—is a novel question of law, requiring this Court, for the first time, to discuss the *scope* of the pretrial identification provision. We have often stated that the scope of pretrial disclosure requirements under Maryland Rule 4–263 must be defined in light of the underlying policies of the rule. *See Johnson v. State,* 360 Md. at 265, 757 A.2d at 804 (2000); *State v. Brown,* 327 Md. 81, 90, 607 A.2d 923, 927 (1992). Inherent benefits of discovery include providing adequate information to both parties to facilitate informed pleas, ensuring thorough and effective cross-examination, and expediting the trial process by diminishing the need for continuances to deal with unfamiliar information presented at trial. Specific to the mandatory disclosure provisions of Rule 4–263(a), the major objectives are to assist defendants in preparing their defense and to protect them from unfair surprise. *See Patrick v. State,* 329 Md. 24, 30, 617 A.2d 215, 218 (1992). The duty to disclose pre-trial identifications, then, is properly determined by interpreting the plain meaning of the Rule with proper deference to these policies.

*Id.* at 72, 771 A.2d 1082.

The Court dismissed the State's contention that the Rule is limited to traditional pre-trial identifications such as show-ups or line-ups. *Id.* at 173, 771 A.2d 1082. The Court explained that

> [d]iscovery rules should assist the defendant in preparing a defense and protect him from surprise . . . Identification

testimony may be outcome determinative and hence, any solid preparation of a defense demands this information. Furthermore, unlike statements made by the defendant, identification testimony naturally comes from third parties. As such, it is information with which, absent the State's disclosure, a defendant may never be familiar until trial. To prevent unfair surprise, disclosure of identification testimony is required.

*Id.* at 174, 771 A.2d 1082 (citations omitted).

"We cannot allow the State to be the recipient of the unquestionable windfall that resulted from its own clear violation of the discovery rules." *Id.* at 176, 771 A.2d 1082. The Court concluded that Maryland Rule 4–263(g) mandates that the State's Attorney turn over any information obtained from Trooper Wilson, and the "State is charged with the 'knowledge of all seemingly pertinent facts related to the charge which are known to the police department.'" *Id.* at 176, 771 A.2d 1082 (quoting *Robinson v. State,* 354 Md. 287, 304, 730 A.2d 181 (1999)). The Court held that Trooper Wilson's observations, "if used by the State for purposes of identification, is 'relevant material regarding a pretrial identification' under Rule 4–263(a)(2)(C) and disclosure is required." *Id.* at 178, 771 A.2d 1082. Thus, the Court's reasoning was based on potential disruption of the trial process by unfair surprise, the right of counsel to prepare, including evaluation of the State's case in deciding how to plead and obviating the need for continuances. The policy considerations were not bottomed on the vagaries of misidentification.[1]

---

1. The focus in Williams was "the *scope* of the pretrial identification provision" in the Maryland Rules relative to the State's failure to provide the defendant with accurate information regarding the extent to which a non-arresting surveilling officer could identify the defendant. Our research has not uncovered any decisions which address squarely the issue of whether a witness's testimony placing a defendant, previously known to the witness, at the scene of the crime constitutes an identification under discovery rules. Decisions considering the testimony of eyewitnesses who had prior knowledge of the defendant before the incident generally devolve upon the issue of the extent to which such prior knowledge would bolster the credibility of their identifica-

■ We are here confronted with what constitutes an identification in the context of the provisions of the discovery

---

tion of the defendant at the crime scene. These decisions focus on countering assertions that pre-trial identifications, including photo arrays, show-up and lineups, were impermissibly suggestive as proscribed by the seminal trilogy of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Gilbert v. State of California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The rationale is that since the eyewitnesses knew the defendant beforehand, it would be less likely that the police procedure would be unduly suggestive and that the judicial identification would be tainted. *See*, for example *State v. Harris*, 871 So.2d 599 (La.App.2004) (prior knowledge of suspects in barroom shooting as witness' ex-boyfriend and his cohort undermined claim that identification was product of impermissibly suggestive confrontations); *See also People v. Sheppard*, 2003 WL 22717987 (Mich. App.2003) (in case in which witness had been told robber was in lineup, but the court found that there was an independent basis for her identification, the court said that, to determine whether there is an independent basis for identification, one can look to, *inter alia,* "the witness's prior knowledge of the defendant".).

Courts generally hold that when an eyewitness tells an officer shortly after the crime that he or she knows the defendant and has seen him around, this independent source of identification trumps any suggestive taint that officers subsequently use while having the eyewitness identify the defendant at the station through photos or lineups. *See also Dang v. U.S.*, 741 A.2d 1039 (D.C.1999); *State v. Tann*, 302 N.C. 89, 273 S.E.2d 720 (1981); *State v. Jaeb*, 442 N.W.2d 463 (S.D.1989); *Butler v. State*, 191 Ga.App. 620, 382 S.E.2d 616 (1989); *People v. Archie*, 200 A.D.2d 676, 607 N.Y.S.2d 55 (1994); *People v. Lainfiesta*, 257 A.D.2d 412, 684 N.Y.S.2d 508 (1999). In delineating the distinction between an identification based on a brief encounter versus one based on prior knowledge of the defendant, the New York Court of Appeals observed:

The People argue that the witness, who lives across the street from the defendant, was sufficiently familiar with him so that her identification of the defendant in the photo was merely confirmatory and therefore, there is not an issue of suggestiveness. Whether this exception applies depends on the extent of the prior relationship, which is necessarily a question of degree ... the court is to consider, among other factors, the number of times the witness viewed the defendant prior to the crime, the duration and nature of those encounters, the setting, the period of time over which the prior viewings occurred, the time elapsed between the crime and the previous viewings, and whether the two had any conversations....

The courts have carved out a confirmatory identification exception. The rationale for this exception is premised on the principle that due to the familiarity between the witness and the suspect, there is little or no risk that police suggestion can lead to mis-identification. The exception may confidently be applied where the protagonists are family members, friends, or acquaintances; at the other extreme, it clearly does not apply when the familiarity emanates from a brief encounter. *People v. Yara*, 2002 WL 31627019 (N.Y.2002).

rules, rather than in the context of a *Wade—Gilbert—Stovall* analysis. Our determination as to whether Maryland Rule 4–263(a)(2)(C) is limited only to "the witness's ability to say 'this is the man,'" as the State suggests, must be guided by the policy considerations so aptly set forth in *Williams*.

In the case *sub judice*, we believe the State violated the Rule when it failed to inform appellant of the pre-trial identification by Hanna. Hanna informed the police, prior to trial, that appellant was the person she saw near Kindsvatter's apartment around the time the crime was committed. At trial, she pointed to appellant and identified appellant and "Roger" as the two men she observed outside Kindsvatter's apartment. As expounded in *Williams*, this unfair surprise was prejudicial to appellant. Appellant points out that, had he known of the pre-trial identification, it could have influenced his decision to accept a plea bargain; he could have questioned Hanna about the identification before trial; conducted a thorough investigation of the scene to assess Hanna's vantage point when she witnessed appellant at the apartment; and tested her on cross-examination. Thus, had appellant received prior notice of the identification evidence, the unfair surprise that the *Williams* Court warned of could have been obviated.

The State argued that it provided the defense with pre-trial discovery that listed Hanna as a witness and no more was required because Hanna knew the appellant. The appellant and his investigator did meet with Hanna before trial, but Hanna did not acknowledge having made a pre-trial identification. Hanna, in fact, stated to defense counsel's investigator that she did not see appellant the night of the crime. Not only did Hanna claim *not* to have seen appellant on the night in question, she actually told the investigator that she did not see appellant *at all that night*. At trial, the investigator testified that, when Hanna "told [her] she did not see [appellant] that evening," she also "told [her] she didn't know anything else about the incident...." Additionally, appellant stated that his counsel had spoken with Hanna prior to trial and, when asked about what she might testify, Hanna did not disclose that she saw appellant on the night in question or that

she had conveyed that information to the police. Even though Hanna may have seen or spoken to appellant in the past, appellant's counsel and the investigator had the opportunity to speak with Hanna, and appellant was aware that she would be a State's witness, such circumstances do not provide a basis to allow the State to withhold pre-trial identification information. Our reading of *Williams* persuades us that Hanna's identification of appellant to the police prior to trial was a pre-trial identification within the meaning of Maryland Rule 4–263(a)(2)(C).

█ The State seizes upon appellant's acknowledgment that "Simons has no quarrel with the proposition that there must be some limiting principle that prevents all statements about interactions with a defendant from constituting 'pretrial identification[s].' " According to appellant, however, "[t]he prior knowledge" test suggested by the State cannot be squared with the result in *Williams,* the terms of Rule 4–263(a)(2)(C), or the goals the Rule seeks to further." At oral argument, before a panel of this Court, proceeding upon the premise that all criminal proceedings involve two components, *e.g.,* criminal agency and *corpus delecti,* there was an apparent consensus that the Rule does not encompass all pre-trial interaction between an eyewitness and the defendant. While we shall not attempt to delineate the "limiting principle that prevents all statements about interactions with a defendant from constituting pre-trial identifications," we are persuaded that the holding in *Williams* constrains us to conclude that, when the pretrial statement of an eyewitness directly implicates the defendant in the commission of the crime, such a statement is the equivalent of the State's test for what constitutes an identification, *i.e.,* the witness's ability to say, "this is the man." We, therefore, hold that the lower court erred in adopting the State's argument that, for purposes of a determination of whether the discovery rules had been violated, Hanna's testimony did not constitute an identification.

█ Concluding that the trial judge erred because the State violated Maryland Rule 4–263(a)(2)(C) by failing to disclose the pre-trial identification, we next consider whether

the error was harmless. If there is a violation under the Rule, the remedy is generally "within the sound discretion of the trial judge." *Williams,* 364 Md. at 178, 771 A.2d 1082. Although the abuse of discretion standard is generally applied, in the case *sub judice,* the trial judge "made no specific finding as a matter of law that the State violated the discovery rule, and therefore he exercised no discretion in fashioning a remedy for the discovery violation." *Id.* The error is harmless if, upon an independent review of the record, we can conclude "beyond a reasonable doubt, that the error in no way influenced the verdict; otherwise, reversal is required." *Id.* at 178–79, 771 A.2d 1082. *See Cole v. State,* 378 Md. 42, 68, 835 A.2d 600 (2003); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

In *Williams,* the Court held that the "State's failure to provide [defendant] with complete and accurate information regarding the extent to which Trooper Wilson, *the only corroborating witness identification* of the defendant, could identify Williams is prejudicial and cannot be construed as harmless error." 364 Md. at 179, 771 A.2d 1082. The Court further stated:

> The inaccurate representation by the State in this case pertained to a fact pivotal to [defendant's] defense. Whether a witness can positively identify the accused at the scene of the crime is often the cardinal facet of a determination of guilt. The State's violation is particularly egregious because the only other testimony linking [defendant] to the charge for which he was being prosecuted came from [an accomplice] who testified pursuant to a plea agreement with the State ... Therefore, without a positive identification by Trooper Wilson, [defendant] could have had a strong basis for moving for judgment of acquittal after the State rested its case. The trial judge's verdict clearly reveals the great weight that was placed on Trooper Wilson's identification testimony in determining [defendant's] guilt.

*Id.* at 179–80, 771 A.2d 1082.

The Court concluded that Trooper Wilson's testimony was unquestionably relied upon by the trial judge and, because his

pre-trial identification "was the only corroborating testimony against [defendant]," the error of admitting the evidence was not harmless, as it contributed "to the rendition of a guilty verdict." *Id.* at 180–81, 771 A.2d 1082. *See Cole v. State*, 378 Md. 42, 69, 835 A.2d 600 (2003)(not harmless error to disallow defendant's expert from testifying based on lack of pre-trial discovery received from the State because "credible identification of the substances as a CDS were at the core of the States's charges"); *Collins v. State*, 373 Md. 130, 148, 816 A.2d 919 (2003)(State's failure during pre-trial discovery to provide defendant with prior conflicting statement regarding identity of murderer was not harmless error).

In *Williams*, the Court said, "[w]hen the pre-trial identification in question was the only corroborating testimony against Williams, we can say with confidence that it is likely that this error did, in fact, contribute to the rendition of a guilty verdict." *Id.* at 181, 771 A.2d 1082. In the case *sub judice*, "if we can say that there is a reasonable possibility that the jury did consider [the error], then we are required to reverse." [2] *Pantazes v. State*, 141 Md.App. 422, 459, 785 A.2d 865 (2001). *See Williams*, 364 Md. at 181, 771 A.2d 1082. We therefore conclude that the error mandates reversal. Although there

---

**2.** As *noted, supra*, Hanna's pretrial identification to the police was neither introduced into evidence or otherwise brought to the attention of the jury. Hanna testified that, on the night in question, she saw appellant and another man pacing back and forth in front of the victim's apartment and, in his opening statement to the jury, the prosecutor likewise had earlier told the jury that Hanna witnessed appellant and another man outside the victim's apartment on the night in question.

Although Hanna identified appellant to the police prior to trial and her identification was referenced in a police report, neither the report nor the fact that she made a pretrial identification to the police, appears to have been revealed to the jury. Her identification of appellant was discussed in detail before the jury, but her pretrial identification to the police was not. Moreover, the investigator's notes, wherein Hanna claims she did not see appellant at the place in question, were marked for identification and referenced to refresh Hanna's memory, but were never introduced into evidence. The jury heard, however, extensive testimony indicating that Hanna told the investigator she did *not* see appellant on the night in question.

**578**

was additional evidence that suggested appellant committed the crime and Hanna did not actually see appellant committing a crime, as was the case in *Williams,* Hanna was the *only* person who observed appellant at the scene of the crime around the time the crime occurred, and therefore, her identification placing appellant at the scene of the crime was crucial to the case. *See, e.g., Pantazes,* 141 Md.App. at 458–59, 785 A.2d 865 (although other evidence existed, credibility was "central to the resolution of the case," and error was not harmless when trial judge allowed testimony regarding a lie detector test that a witness had taken). This point was stressed to the jury numerous times during trial. We cannot say beyond a reasonable doubt that the error did not contribute to the rendition of the verdict. The error was not harmless.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY HARFORD COUNTY.**